INDEPENDENT LIFE INSURANCE COMPANY, PLAINTIFF IN ERROR, *v.* C. E. RODGERS, DEFENDANT IN ERROR.*

*(Knoxville,* September Term, 1932.)

Opinion filed January 10, 1933.

---

*As to privilege in judicial proceedings, see 17 R. C. L., 333 et seq.; R. C. L. Perm. Supp., p. 4253; R. C. L. Pocket Part, title "Libel and Slander," Sec. 80.

On right to pursue lawful calling as property, see 6 R. C. L., 266; R. C. L. Perm. Supp., p. 1680; R. C. L. Pocket Part, title "Constitutional Law," Sec. 251.

FINLAY & CAMPBELL, and JAMES A. NEWMAN, for plaintiff in error.

WHITAKER & WHITAKER, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a libel suit in which the jury returned a verdict in favor of the plaintiff below for $25,000. A *remittitur* of $10,000 was suggested, and accepted under protest, and judgment entered in the trial court for $15,000. The Court of Appeals reversed the judgment of the trial court and dismissed the suit.

Both parties have filed petitions for *certiorari*, the defendant in error complaining of the action of the Court of Appeals in dismissing the suit and the plaintiff in error seeking to bring up for consideration certain matters pretermitted by the Court of Appeals. Both petitions were granted.

The defendant in error, Rodgers, was an industrial insurance agent in the employ of plaintiff in error, the Independent Life Insurance Company. He left the employ of that company. There was a controversy as to the state of the account between the agent, also a collector, and the company. The agent retained certain collections made by him on insurance premiums, claimed by him to be the sum due him from the company, less some interest. It may be assumed that the agent's claim in this particular was thereafter justified.

On September 4, 1930, the president of the company addressed a letter to the Insurance Commissioner of the State in which he said:

"Certain different States, through other Commissioners, have called upon us, as upon other companies, to report to them any agent employed by us turning up with deficiencies or shortages. We have been trying to get our men to do that, because we think it is beneficial to the business, or will be in the future."

The letter then contains a report as to an alleged shortage of a former agent other than Rodgers. Continuing, the writer says:

"C. E. Rodgers of Chattanooga took things into his own hands and collected his money before a final had been made against him and before we had time to check up and see how much he is short, but it will be slight, but we understand that he is going to work for the Federal Union of Cincinnati, Ohio, and is going to work in Chattanooga."

Reference is then made to another former agent and the letter concludes:

"We do not make any such demand and do not want to be any trouble to your office, but we procured license

for these men and paid for them, and we think probably it will be plenty of time for them to go to work for some other company when they have a clean bill of health from us.'' Signed by the president of the company.

Prior to the receipt of this letter, the Insurance Commissioner had, upon application of the Federal Union Company of Cincinnati, issued a license to Rodgers to write insurance for that company expiring December 31, 1930. Upon receipt of the letter aforesaid the Commissioner notified plaintiff in error of its contents and asked for his explanation. The letter was understood by the Commissioner as a charge against Rodgers going to his eligibility to work for the Federal Union Company. We interpret the letter likewise.

This case is pitched upon the theory that the contents of the letter were libelous *per se*. The Court of Appeals while finding some error in the charge of the trial judge, dismissed the suit on the ground that the communication upon which the suit was based was absolutely privileged—that it was made in a judicial or quasi-judicial proceeding. Although this conclusion of the Court of Appeals is assailed with much vigor and learning, upon full consideration, it appears to us that the court was right.

The immunity of parties and witnesses from libel and slander suits on account of pertinent expressions uttered by them in judicial proceedings is well established in Tennessee. In *Lea* v. *White*, 36 Tenn. (4 Sneed), 111, after a discussion of the rule of conditional privilege, where there is no liability unless there is malice, the court said:

''But there is another class of cases which are absolutely privileged, and 'depend in no respect for their

protection upon their *bona fides.*' 'The occasion is an absolute privilege; and the only questions are whether the occasion existed, and whether the matter complained of was pertinent to the occasion.' 1 Stark. on Sland., 403, 404; Cooke on Defam., 48, top. In this class are embraced judicial proceedings. 'The proceedings connected with the judicature of the country are so important to the public good, that the law holds that nothing which may be therein said with probable cause, whether with or without malice, can be slander; and, in like manner, that nothing written with probable cause, under the sanction of such occasion, can be a libel.' *Id.,* 49. The pertinency of the matter to the occasion is that which is meant by probable cause; and probable cause is, in this class of absolutely privileged communications, what *bona fides* is to the class of constitutionally privileged communications, which, we have seen, are protected, unless there is malice in fact."

This case was followed by *Cooley* v. *Galyon,* 109 Tenn., 1, *Crockett* v. *McLanahan,* 109 Tenn., 517, and *Roberts* v. *Parker,* 156 Tenn., 82, and *Wells* v. *Carter,* 164 Tenn., 400. The rule thus announced was recognized in *Shadden* v. *McElwee,* 86 Tenn., 146, but a witness was there held to be without this protection as to his voluntary statements not pertinent to the inquiry before the court.

In *Buohs* v. *Backer,* 53 Tenn. (6 Heisk.), 395, it was held that statements in a pleading concerning one not a party to the suit were not absolutely privileged but were conditionally privileged. This conclusion, however, was expressly repudiated in *Crockett* v. *McLanahan, supra.*

In *McKee* v. *Hughes,* 133 Tenn., 455, the court discussed the contents of a petition of citizens addressed to the mayor and aldermen of the town of Spring Hill re-

questing that a store conducted in that town be declared a public nuisance and that the license of the storekeeper be revoked and his place of business closed. It was held that the contents of the petition were conditionally privileged rather than absolutely privileged. Obviously this petition could not be regarded as the institution of a judicial proceedings since the court expressly found that the mayor and aldermen were without power or jurisdiction to revoke the license of the storekeeper. As a matter of fact, however, the court found that there was no malice apparent and affirmed the action of the trial judge in dismissing the suit.

At this point we may lay to one side many of the authorities relied on by counsel for the insurance agent with the observation that they deal with statements made in the course of proceedings before legislative bodies, administrative officers and executives. That while said functionaries were clothed with judicial discretion in such proceedings, they were not acting as courts.

Without any detailed discussion of the statutes that endow the Insurance Commissioner with authority judicial in its nature, it is sufficient to refer to chapter 46 of the Acts of 1925, entitled ''An Act to regulate the issuance and revocation of license to persons to act as Insurance Agents and Solicitors in the State of Tennessee.''

''Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the Commissioner of Insurance and Banking of the State of Tennessee is hereby given the power, upon application to him by any insurance company, association, fraternal benefit society or other insurance organization, or agent or general agent, to license any person or persons to transact the busi-

ness of an insurance agent or agents or solicitor or solicitors; but no rules or regulations prescribed by the Commissioner shall make the licensing of applicants dependent in any manner on the recommendation of other Insurance Agents, or Associations of Insurance Agents.

"That before issuing such license, the said Commissioner shall have the power to require a specific reasonable information with respect to the moral character and fitness of all such persons, and that he may prescribe reasonable rules and regulations for the acquisition of such information as he may reasonably deem necessary in determining the fitness of all persons desiring to become such agents or solicitors. That every insurance company, including fraternal benefit associations, and all other companies licensed to do business in this State, shall obtain from the said Commissioner of Insurance and Banking a certificate of authority for every agent or solicitor writing or soliciting insurance for them as now provided in this State, and that such certificate shall be renewable in January of each year, and that the same may be revoked after a hearing for good cause shown by said Commissioner of Insurance and Banking. That this Act shall not apply to any executive or traveling salaried employe of any Insurance Company, Association or any other insurance organization."

It will be seen that this Act regulates the issuance and renewal of license or certificates of authority for agents and solicitors and then provides "that the same may be revoked after a hearing for good cause shown by said Commissioner of Insurance and Banking."

The Commissioner is thus given full jurisdiction in the premises. He is authorized to revoke upon "good cause shown". The inquiry is limited to the

cause shown or charge made and a test of pertinency afforded. An actor, a party complainant or prosecutor, is involved in the showing of good cause. A "hearing" is provided. A hearing involves an opposite party, a defendant. The hearing provided is a legal hearing and notice to the defendant is necessarily implied. The Act has been so construed and administered by the Commissioner. A hearing without notice would be without due process of law since we think the right of an insurance agent to pursue his avocation is a property right like the right of a physician to pursue his profession. *State Board of Medical Examiners* v. *Friedman,* 150 Tenn., 152.

■ It seems to us that the Act of 1925, with respect to the revocation of an insurance agent's license, clothes the Insurance Commissioner with attributes similar to those of a court and makes of him a court to determine this matter of revocation.

■ Absolute privilege, as distinguished from qualified privilege, has been extended to many inquiries that are not conducted before courts of justice or courts of record. The immunity has been accorded to statements made in a court martial; *Dawkins* v. *Rokeby,* 45 L. J. Q. B., 8, *Jekyll* v. *Moore,* 2 Bos. & P. (N. S.), 341; to statements made in an extradition proceeding before the Governor; *Brown* v. *Globe P. Co.,* 213 Mo., 611, 112 S. W., 462; to proceedings before the interstate commerce commission; *Duncan* v. *Atchison, etc., R. Co.,* 72 Fed., 808; to affidavits for a search warrant made before a justice of the peace; *Stone* v. *Hutchinson Daily News,* 125 Kan., 715, 266 Pac., 78, 58 A. L. R., 718; *Vausse* v. *Lee,* 19 S. C. L. (1 Hill), 197, 26 Am. Dec., 168, Note 58 A. L. R., 723; to preliminary statements of a witness

made to counsel before trial; *Watson* v. *McEwan* (1905), A. C., 480, 3 Anno. Cas., 124; and in two cases to statements made upon the hearing of applications for pardon to the Governor. *Connellee* v. *Blanton* (Tex. Civ. App.), 163 S. W., 404; *Keenan* v. *McMurray,* 34 Pitsb. L. J. (N. S.) (Pa.), 223—the New York Court of Appeals, however, taking a contrary view in *Andrews* v. *Gardiner,* 224 N. Y., 440, 121 N. E., 341, 2 A. L. R., 1371. Other illustrations might be added.

We are by no means inclined to regard as absolutely privileged proceedings before every official, board, committee or the like, authorized to conduct an investigation, merely because such an arm of the law is to exercise judicial discretion. We think the limitations upon the doctrine of absolute privilege in judicial proceedings are well stated in *Royal Aquarium* v. *Parkinson* (1892), 1 Q. B., 431. In that case Lord Esher said:

"It is true that, in respect of statements made in the course of proceedings before a Court of justice, whether by judge, or counsel, or witnesses, there is an absolute immunity from liability to an action. The ground of that of that rule is public policy. It is applicable to all kinds of Courts of justice; but the doctrine has been carried further; and it seems that this immunity applies wherever there is an authorized inquiry which, though not before a Court of Justice, is before a tribunal which has similar attributes. In the case of *Dawkins* v. *Lord Rokeby,* the doctrine was extended to a military Court of inquiry. It was so extended on the ground that the case was one of an authorized inquiry before a tribunal acting judicially, that is to say, in a manner as nearly as possible similar to that in which a Court of justice acts in respect of an inquiry before it. This doctrine

has never been extended further than to Courts of justice and tribunals acting in a manner similar to that in which such Courts act.''

In the same case FRY, L. J., observed:

''There are many other courts which, though not Courts of justice, are nevertheless courts according to our law. There are, for instance, courts of investigation, like the coroner's court. In my judgment, therefore, the existence of the immunity claimed does not depend upon the question whether the subject-matter of consideration is a Court of Justice, but whether it is a Court in law. Wherever you find a Court in law, to that the law attaches certain privileges, among which is the immunity in question.''

In this case it was held that the statement of a member of the London City Council, made at a meeting of that body, with regard to a person applying for a renewal of license to run a music and dance hall, was conditionally, not absolutely, privileged.

In *Andrews* v. *Gardiner*, 224 N. Y., 440, 121 N. E., 341, 2 A. L. R., 1371, referred to above, the court declined to treat as absolutely privileged statements made before the Governor on an application for pardon, saying there was no limit to the range of such an inquiry, that it was a petition for grace and mercy by an appeal to motives and arguments which were not those of jurisprudence, that there was no test of pertinency, and that there must be some check upon calumny in such proceedings. The court, however, ·apparently recognized the authority of *Royal Aquarium* v. *Parkinson, supra,* and other cases, that absolute privilege would be accorded to statements made before tribunals having attributes similar to those of courts.

 As all the courts point out, the basis of absolute privilege is public policy.

Chapter 46 of the Acts of 1925 having conferred upon the Insurance Commissioner, with respect to the matter of the revocation of an insurance agent's license, attributes similar to those of a court, we are of opinion that policy requires that immunity be accorded to the statements of parties to and witnesses in an investigation of this sort conducted by the Commissioner. Agents handling industrial insurance particularly deal with people that are poor and generally with people that are ignorant. Such persons are frequently unable to read policies issued to them and are commonly unable to understand the provisions of the policies, albeit such provisions are binding upon them. Many painful cases come before the courts where such people have given up their scanty earnings without profit to themselves or to their beneficiaries because of unauthorized misrepresentations by unscrupulous agents as to the terms and effect of insurance contracts such agents were writing. The interest of the people as a whole, more especially the interest of the poor and ignorant, requires a supervision of agents authorized to solicit and write life insurance. Only men of good character should be permitted to pursue such a calling and dishonest and unreliable men should be debarred from such a calling.

The Insurance Commissioner should have every facility for informing himself as to insurance agents. The insurance companies and others interested should be encouraged to bring to the attention of the Insurance Commissioner the derelictions of such agents. The design of chapter 46 of the Acts of 1925 will be obstructed if those instituting or participating in proceedings to

bring about the revocation of the license of an unworthy agent may be subjected by reason of their statements to a suit for libel or a suit for slander. The statute throws around such proceedings before the Commissioner safeguards similar to those hedging proceedings before a court of justice. There should be the same immunity in both tribunals.

Hard cases may arise. Hard cases may likewise arise out of the immunity accorded to proceedings in courts of justice. Replying to such an argument made as to the immunity of a witness in a court martial it was said:

"It is said that a statement in effect of a libellous nature, which is palpably untrue, known to be untrue by him who made it, and dictated by malice, ought to be the subject of a civil remedy, though made in the course of a purely military enquiry. This mode of stating the question assumes the untruth, and assumes the malice. If by any process of demonstration free from the defects of human judgment the untruth and malice could be set above and beyond all question or doubt, there might be ground for contending that the law of the land should give damages to the injured man.

"But this is not the state of things under which this question of law has to be determined. Whether the statements were in fact untrue, and whether they were dictated by malice, are, and always will be, open questions upon which opinions may differ, and which can only be resolved by the exercise of human judgment. And the real question is whether it is proper on grounds of public policy to remit such questions to the judgment of a jury. The reasons against doing so are simple and obvious. A witness may be utterly free from malice, and may yet in the eyes of a jury be open

to that imputation, or again, the witness may be cleared by the jury of the imputation, and may yet have had to encounter the expenses and distress of a harassing litigation. With such possibilities hanging over his head, a witness cannot be expected to speak with that free and open mind which the administration of justice demands." *Dawkins* v. *Rokeby*, 45 L. J. Q. B., 8, 9 Eng. Rul. Cas., 39.

The judgment of the Court of Appeals is affirmed. Justice CHAMBLISS not participating.