HUGHES v. BIZZELL et al.

No. 30171.   Sept. 23, 1941.

Rehearing Denied Oct. 14, 1941.

*117 P. 2d 763.*

Wells & Spurr, of Seminole, for plaintiff in error.

McInnis & Thompson, of Oklahoma City, for defendants in error.

HURST, J. This is an action by the plaintiff, Ruth Thompson Hughes, against the defendants, Dr. Bizzell, President of the University of Oklahoma, and Dr. Patterson, Dean of the Medical School, to recover damages for conspiracy in causing her dismissal as librarian of the Medical School. The trial court sustained a demurrer to the petition, the plaintiff refused to plead further, and thereupon the court dismissed the cause. Plaintiff appeals.

The petition alleged the official positions of the defendants; that plaintiff served efficiently as such librarian from September 15, 1931, to August 1, 1938, at an approximate salary of $1,500 per annum; that on May 31, 1938, she received a letter of that date, signed by Dr. Patterson, discharging her as such librarian; that the letter was written, and her discharge was procured, as a result of a conspiracy between the defendants entered into and carried out to destroy her professionally and her reputation as an efficient librarian; that she demanded, and was granted, a hearing before the Board of Regents of the University, and that at the hearing the defendants appeared and, in furtherance of the conspiracy, charged that she had procured her position by stating that she was a graduate of Washington University, in library science, and that such information was carried in the bulletins issued and sent out by the University, and that by such charges the defendants led the Board of Regents to believe that she should be discharged as such librarian; that such charges were false and such information had not been carried in the bulletins; that in fact she was employed as such librarian on the true representation that she had an A.B. degree from the University of Oklahoma, and that the only library training she had was about 45 credit hours of library science in the St. Louis Library School; that the defendants knew such charges to be false; that in furtherance of such conspiracy the defendants refused to give her letters of recommendation so as to enable her to secure a like position in another institution; that she had sustained damages in the sum of $50,000 as a result of the carrying out of such conspiracy.

1. We are committed to the rule that for the purpose of testing the sufficiency of a petition, a demurrer thereto admits the truth of all facts well pleaded, together with all inferences which may be reasonably drawn therefrom, and the petition must be liberally construed in favor of the plaintiff. Crews v. Garber, 188 Okla. 570, 111 P. 2d 1080. Therefore, for the purpose of passing upon the legal questions presented, we must assume that the conspiracy was entered into and carried out as alleged, that the statements set out in the petition were made, that they are false, that defendants knew they were false at the time they

were made, that they were made with an evil intent to injure the plaintiff, and that as a result thereof plaintiff was discharged and suffered actual damages as alleged.

Both parties insist that the gist of the action is damages sustained as a result of the alleged conspiracy, and not damages for defamation. We will so treat it, and confine our discussion to the question of liability for the alleged conspiracy.

2. A conspiracy is a combination of two or more persons to accomplish, by concerted action, some unlawful purpose, or to accomplish a lawful purpose by unlawful means. Mangum Electric Co. v. Border, 101 Okla. 64, 222 P. 1002; 11 Am. Jur. 543; 15 C.J.S. 996; 5 R.C.L. 1061; 12 C. J. 540. It follows from this definition that there can be no conspiracy "where the acts complained of, and the means employed in doing the acts, are lawful." Walker v. Mills, 182 Okla. 480, 78 P. 2d 697.

Plaintiff admits that the defendants had the right to discharge her without assigning any reason for so doing, but contends that they used unlawful means to do a lawful act, and that the unlawful means consisted of the false charges set out in the petition, and that by making such false charges she was defamed by the defendants. The question then is whether the occasion for making the charges constituted an absolute or only a qualified privilege. If the privilege was absolute, the acts of the defendants are not unlawful. But if the privilege is a qualified one, then the petition states a cause of action by charging that the statements made were false and prompted by malicious motives, and the question is for the trier of the facts.

We are of the opinion that the decision in Sanford v. Howard, 185 Okla. 660, 95 P. 2d 644, is decisive of the issue presented. The powers and duties of the Board of Regents and President of the Colored Agricultural and Normal University of Oklahoma, there under consideration, are analogous to those of the Board of Regents and President of the University of Oklahoma. See sections 7208-7243, O. S. 1931, 70 O.S.A. §§ 1211-1300. The occasion of the alleged slander by Sanford, President of the Colored Agricultural and Normal University, in the cited case, was substantially the same as the occasion of the alleged unlawful slander involved in the instant case. That case construes section 726, O. S. 1931, 12 O.S.A. § 1443, and holds that the remarks of the president at the session of the Board of Regents concerning the fitness of the plaintiff, an employee of the school, were absolutely privileged. While, as pointed out by the plaintiff, there are respectable authorities holding that the occasion afforded only a qualified privilege, the cited case commits us to the rule of absolute privilege. See, also, Gottschalck v. Shepperd, 65 N. D. 544, 260 N. W. 573.

Here the alleged slanderous statements were made at a session of the Board of Regents, held to pass upon the discharge, by defendants, of the plaintiff. The reason for the rule of absolute privilege is stated in Newell, Slander and Libel (4th Ed.) p. 380, § 341:

"The great underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and the necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare."

See, also, Spalding v. Vilas, 161 U. S. 483, 16 S. Ct. 631; De Bolt v. McBrien, 96 Neb. 237, 147 N. W. 462.

The Board of Regents is the governing board of the University. It has the final word in the employment or discharge of its faculty members and employees. It is to the interest of the public that the best qualified persons serve the University. The board must largely depend upon the president, deans, and

heads of departments for correct information as to the fitness and qualifications of those on the pay roll and those seeking employment. If, in giving such information to the board, such officers were not under the rule of absolute privilege, every disgruntled person, refused employment or discharged, could file suit for damages for defamation or conspiracy against such officers and state a cause of action requiring them to stand trial before a jury as to their motives or the truthfulness of their statements, regardless of the correctness of the allegations of the petition or the merits of the cause. Such a rule would tend to deprive the board of the benefit of candor and full disclosure as to the qualifications of the employee or applicant. The rule of absolute privilege in such a case is for the protection of the public and not for the protection of the officers.

The statements being absolutely privileged, it is immaterial as to whether they were made with improper motives or whether they were false.

It follows that the means employed to secure the discharge of plaintiff were not unlawful, and the petition does not state a cause of action for conspiracy.

Affirmed.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and RILEY, J., absent.