## JOHNSON v. INDEPENDENT LIFE & ACCIDENT INS. CO. OF JACKSONVILLE, FLA.

### Civ. A. No. 2333.

### United States District Court

### E. D. South Carolina, Columbia Division.

### Jan. 6, 1951.

960

Henry H. Edens, Henry Hammer, both of Columbia, S. C., for plaintiff.

Douglas McKay, Douglas McKay, Jr., Julius W. McKay, of firm of McKay & McKay, all of Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This is an action for libel. The complaint alleges that plaintiff was formerly employed by defendant Insurance Company as collector and agent; that when he left defendant's employ, the defendant wrote the following letter concerning him to the State Insurance Commissioner: "This is to notify you that Mr. J. O. Johnson is no longer connected with this company. The reason for leaving was due to his continuous drinking. He was short about $25.00 and this was taken from his salary so please cancel his license with us. I would not recommend him to any other company"; and that the letter was false, malicious, and tended to charge plaintiff with crime and moral turpitude.

The answer of the defendant admits the writing of the letter to the Commissioner but alleges, among other defenses, that the letter was published on an absolutely privileged occasion, was relevant thereto, and no action could be brought thereon, and that it acted under certain provisions of the South Carolina Insurance Law, Act No. 232, 45 S.C. Statutes at Large for 1947, p. 322 et seq., and, in particular, under section 107 of article 1 of that Law.

The case is before me upon defendant's motion for summary judgment. Defendant contends that the communication is absolutely privileged as a matter of law. It bases its motion on the pleadings, the State Insurance Law, and certain affidavits. Plaintiff, in opposition, contends that the communication is only qualifiedly privileged. It will, therefore, be observed that the sole question for determination is whether or not the letter written by the defendant to the Insurance Commissioner is an absolutely privileged communication for which no remedy can be had in a civil action.

The letter was written by defendant's District Manager when plaintiff's employment was terminated, giving causes therefor, as required by the Insurance Law. It was retained by the Insurance Department for its own use in confidential files pursuant to that law. It was relevant to the occasion which the law created, whether absolutely or qualifiedly privileged.

It does not appear that the Supreme Court of South Carolina has decided what degree of privilege extends to communications, such as the one here involved, made under the Insurance Law. Since this question is of novel impression, I have analyzed below the salient features of that law which I deem applicable here:

■ *First:* Section 107 of article 1 of the Insurance Law is designed to, and did invest the Insurance Commissioner of South Carolina with the broadest and most extensive powers of supervision and control over insurance companies and insurance agents operating in South Carolina, and to give the Insurance Department complete power and authority in the licensing of insurance agents. The Commissioner is empowered to give written examinations to applicants for agents' licenses, and before issuing a license he is required to determine that the agent "is a competent and trustworthy person". He may revoke a license after ten days' notice, or refuse to reissue it where the agent "has violated the laws of this State or has willfully deceived or dealt unjustly with the citizens of this State". The insurance company is required to vouch for the applicant that it "has duly investigated the character and record of such person, and has satisfied itself that he is trustworthy and qualified to act as its agent". The Insurance Department is given quasi-judicial powers with regard to the licensing of agents under this section. Independent Life Ins. Co. v. Rodgers, 1933, 165 Tenn. 447, 55 S.W.2d 767; Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909.

*Second:* The Insurance Commissioner, as executive head of the Insurance Department, Section 5 of article 1 of the Insurance Law, has continuing jurisdiction to receive information concerning agents. The companies are required to collaborate with him in this respect. Section 107, above referred to, includes, *inter alia,* the following provision: "That all applicants for an insurance agent's license shall be vouched for by an official or a licensed representative of the Company for which he proposes to act, who shall certify whether the applicant has been appointed an agent to represent such company, and that such company has duly in-

vestigated the character and record of such person, and has satisfied itself that he is trustworthy and qualified to act as its agent and intends to hold himself out in good faith as an insurance agent. PROVIDED, *that when a contract of an agent is canceled by the company represented, that company shall notify the Insurance Department of such cancellation within ten (10) days stating the cause of such termination. Such records furnished by companies shall be for the use of the Insurance Department solely and not for public inspection.* \* \* \*" (Emphasis added.)

■ *Third:* The requirement of the law that the records furnished by the companies are for the use of the Insurance Department only and not for public inspection is evidence of a legislative intent that they be confidential, and, by inference, privileged.

■ In Bell v. Bank of Abbeville, 208 S.C. 490, 38 S.E.2d 641, 642, the South Carolina Supreme Court distinguished "absolute" from "qualified" privilege as follows: "Privileged communications or publications are of two kinds: 1, Absolute; 2, Conditional or qualified. *When the communication is absolutely privileged, no action will lie for its publication, no matter what the circumstances under which it is published.* When qualified, however, the plaintiff may recover if he shows that it was actuated by malice. \* \* \*" (Emphasis added.)

■ "Absolute privilege" is defined in 33 American Jurisprudence at page 123, in the following words: *"An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously.*

"The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and *other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the*

*state,* and matters involving military affairs. * * *" (Emphasis added.)

In Tanner v. Stevenson, 138 Ky. 578, 128 S.W. 878, 881, 30 L.R.A.,N.S., 200, the court said, with reference to absolute privilege: "* * * The law holds good character in high esteem and has made it a serious offense to wantonly assault it; *but there are a few instances in which the interest of the public is esteemed more important than that of the individual, and occasions in which private rights must yield to public good.* In these cases there is no penalty attached to malice or falsehood. The utmost liberty is deemed allowable, and communications that under other circumstances would be actionable are treated as permissible. But the cases to which this immunity from liability applies are confined to judicial and legislative proceedings, matters involving military affairs, *and communications made in the discharge of a duty under express authority of law by or to heads of executive departments of the state.*" (Emphasis added.)

■ South Carolina has applied the doctrine of absolute privilege to several occasions other than those comprising strictly legislative or judicial proceedings. In the early decision of Reid v. Delorme, 2 Brev., S.C., 76, the court held absolutely privileged, defendant's petition to the Legislature concerning the Attorney General's failure to prosecute the plaintiff for an alleged felony, on the ground that defendant's constitutional right to petition for redress against a public official must be guarded and protected. In Rodgers v. Wise, 193 S.C. 5, 7 S.E. 2d 517, a letter written by an attorney to an associate in another state concerning a case in which both were interested, was held absolutely privileged. In State v. Drake, 122 S.C. 350, 115 S.E. 297, the court reversed a criminal conviction of defendant for libel of his wife in a letter written to his Masonic Lodge. The court held that since the letter was written to the Lodge, in defense of certain charges which had been brought against defendant by the Lodge, and was directed to the Lodge, only for its consideration, it was confidential and privileged.

In Carver v. Morrow, 213 S.C. 199, 48 S.E.2d 814, 816, the executors of an estate were sued for libel on the ground that the testator's will defamed plaintiff. The action was based on the premise that the probate of the will constituted a publication of the alleged libel. The executors demurred to the complaint, and the decree of the lower court sustaining the demurrer was adopted and affirmed by the State Supreme Court. The court held that there was no publication of the libel during the testator's lifetime and libel was not one of the actions which could survive against his estate. It held that the probating of the will did not constitute such a publication of the libel or consummation of the tort as would make either the executors or the estate liable, and declared that: "It is the duty of an executor to probate the will. He has no choice. Although named by the testator, he is appointed officially by the Probate Court. In fact, it is a misdemeanor for one to suppress a will. * * * when an executor offers a will for probate, he is acting in an official capacity; and while, of course, he himself has an absolute privilege so that there can be no personal liability against him, neither" is he "to such an extent the testator's agent that it could be said he had authority to consummate by means of publication a libel which may have been written, but not published, in the lifetime of his testator, and to fasten a liability upon a dead man's estate, where none existed while he lived. * * *"

■ The courts of other jurisdictions vary in their holdings as to the degree of privilege to be accorded a communication made by a private person or concern to public authorities. See, Annotation, 136 A.L. R. 543, et seq. No uniform rule on absolute privilege may be derived from a study of the many decisions. "The great underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and the necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake

of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare." Newell on Slander and Libel, 4th Ed., quoted in Hughes v. Bizzell, 189 Okl. 472, 117 P. 2d 763, 765. "It is the occasion, not the communication, which creates or furnishes the privilege. The rule is one of public policy. It is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual." Reagan v. Guardian Life Insurance Co., 140 Tex. 105, 166 S.W.2d 909, 913.

Under a statute providing that a privileged communication is one made in any legislative or judicial proceeding, or in any other proceeding authorized by law, the North Dakota Supreme Court in the case of Stafney v. Standard Oil Co., 71 N.D. 170, 299 N.W. 582, 586, 136 A.L.R. 535, held absolutely privileged a communication by an employer to the Unemployment Compensation Division, written under authority of the Unemployment Compensation Law of that State, and said: "Clearly, the information furnished by the defendant was of the character permitted, invited, and required by the Bureau; and from the language of the Act involved * * * the employer is compelled to furnish information under the penalty of fine or imprisonment. * * *

"Among absolutely privileged communications are those made in the discharge of a duty under express authority of law, by or to heads of departments of the state (Tanner v. Stevenson, 138 Ky. 578, 128 S.W. 878, 881, 30 L.R.A.,N.S., 200), as 'public service * * * requires complete immunity from being called to account for language used'. Taber v. Aransas Harbor Terminal Ry., Tex.Civ.App., 219 S.W. 860, 861. It is true the Texas court refers specifically to language used in legislative bodies, in debates, language used by judges on the bench and witnesses, etc., but the rule holds good where the communication is such as is required by statute."

The Minnesota court in Burgess v. Turle & Co., 155 Minn. 479, 193 N.W. 945, decided that under a statute directing that notice of cancellation of certain contracts be published in a newspaper, where the vendee could not be personally served, the publication of such notice, although false and malicious, was absolutely privileged because it was required by statute.

Another instance in which a communication to a governmental department becomes absolutely privileged arises when the department possesses powers of inquiry and discretion. In that event, the powers of the department are held quasi-judicial, and the same privilege is extended to matters properly before it as is accorded to proceedings in courts of law.

Communications to executive departments have been held absolutely privileged, although they were voluntarily made, and not *required* by law to be made. In Higgins v. Williams Pocahontas Coal Co., supra, 103 W.Va. 504, 138 S.E. 112, 113, the West Virginia court held absolutely privileged a letter written by an employer to the Workmen's Compensation Commission after hearing, and an award in the case, because the Commission exercised quasi-judicial powers, and asserted that: "The fact that plaintiff's claim had been investigated and an award made did not close the case. By statutory provision there is no finality to such an award, * * *."

In Alagna v. New York & C. Mail S. S. Co., 155 Misc. 796, 279 N.Y.S. 319, a letter written to the Federal Radio Commission by a shipowner protesting against certain acts of its radio operators was held absolutely privileged, since the Commission exercised quasi-judicial powers in the licensing of operators, and was authorized to to hear complaints by employers, the letter being treated as such a complaint.

In Texas and Tennessee the courts have held absolutely privileged communications by insurance companies to the State Insurance Department which reflected on the integrity of former agents of such companies. Independent Life Ins. Co. v. Rodgers, 165 Tenn. 447, 55 S.W.2d 767, 770; Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909. In neither case was there recited any requirement of law, such as there is in South Carolina, that the in-

surance company notify the Insurance Department when an agent leaves its employ. The communications were voluntarily made.

In Independent Life Insurance Co. v. Rodgers, supra, the Tennessee court held absolutely privileged a letter written by the insurance company to the Insurance Commissioner concerning a former agent who had gone to work for another company, on the ground that the Insurance Commissioner exercised quasi-judicial powers in the licensing and revocation of licenses of agents, and said: " * * * The interest of the people as a whole, more especially the interest of the poor and ignorant, requires a supervision of agents authorized to solicit and write life insurance. Only men of good character should be permitted to pursue such a calling, and dishonest and unreliable men should be debarred from such a calling. The insurance commissioner should have every facility for informing himself as to insurance agents. The insurance companies and others interested should be encouraged to bring to the attention of the insurance commissioner the derelictions of such agents. The design of chapter 46 of the Public Acts of 1925 will be obstructed if those instituting or participating in proceedings to bring about the revocation of the license of an unworthy agent may be subjected by reason of their statements to a suit for libel or a suit for slander. The statute throws around such proceedings before the commissioner safeguards similar to those hedging proceedings before a court of justice. There should be the same immunity in both tribunals."

In the Texas case of Reagan v. Guardian Life Ins. Co., supra, 140 Tex. 105, 166 S.W.2d 909, 912, a former agent sued the defendant because it had transmitted to the State Board of Insurance Commissioners a complaint by a policy-holder of the company concerning him, which two agents of the company had allegedly forged. As a result, the plaintiff lost his job with another insurance company. The court held that the statute creating the Board vested it with quasi-judicial powers and applied the rule of absolute privilege to the communication sued upon, in the following language: "The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers. * * *

"It is clear that the * * * statutes constitute the Board of Insurance Commissioners a quasi-judicial body, with reference to the licensing of life insurance agents and with reference to the forfeiting of such licenses when once issued, for improper or unlawful conduct on the part of such agents. Clearly, these statutes authorize the Board of Insurance Commissioners to conduct investigations and make fact findings. Furthermore, these statutes clearly give the members of the general public the right to make complaint to the Board of Insurance Commissioners, and the right to communicate with such Board touching the matters under consideration, just as such persons would have the right to communicate with a court.

"It follows from what we have said that, when the agent of defendant filed this instrument with the Board of Insurance Commissioners, he committed an act for which the law provides no redress in damages for this plaintiff. This is true whether the instrument is true or false, real or forged. * * * The rule of privilege as applied to absolutely privileged communications is not founded on the theory that the communications furnish any defense, but on the fact that the law allows absolute privilege or immunity on account of the occasion upon which the communication is made. It is the occasion, not the communication, which creates or furnishes the privilege. The rule is one of public policy. It is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual."

Plaintiff relies upon the case of Independent Life Ins. Co. v. Hunter, 166 Tenn. 498, 63 S.W.2d 668. In that case the Tennessee court refused to hold absolutely privileged a letter written by the insurance company about a former agent who had not gone to work for another insurance company, on

the ground that the Commissioner had no further jurisdiction over the agent, and, therefore, had no authority to consider the charges concerning him. In my opinion this case is not applicable, because the South Carolina statute continues the Insurance Commissioner's jurisdiction regardless of whether or not an agent goes to work for another company since it requires the employer to notify the Insurance Department when the agent's contract is terminated.

██ The insurance law of South Carolina was enacted to regulate the business of insurance in this State. The provisions under consideration here are designed not to govern the rights and duties of companies and their agents, but primarily to protect the people of the State who seek to insure their lives and property. It is a matter of common knowledge that the vast proportion of policy-holders deal with their insurance companies only through insurance agents, and the paramount purpose and intent of the law considered here is to safeguard their interests by ascertaining that the agents through whom they deal are competent and trustworthy.

The Insurance Department is charged with the duty and responsibility of administering the insurance law for the public welfare and in the public interest and the Insurance Commissioner must have access to all necessary information to carry out effectively this duty. The insurance companies, themselves, are required by law to aid him in this endeavor, and it is reasonable to assume that without their full cooperation, the department and the Commissioner would be seriously handicapped.

An insurance company must be free to disclose to the Insurance Department all information at its disposal which may relate to the character or fitness of an agent. To do so, the company must be assured that its good faith and motive in obeying the statutory mandate will not have to be justified in a suit for defamation in a court of law. Otherwise, its communications to the Department would have to be so vague and circumspect, and so devoid of any matter which might be construed defamatory, that the purpose of the statute would be defeated to the public detriment.

Paraphrasing the words of the court in the case of Hughes v. Bizzell, supra, 189 Okl. 472, 117 P.2d 763, it may be reasonably said, if, in giving such required information to the State Insurance Department, insurance companies were not under the rule of absolute privilege, every disgruntled person, refused employment or discharged, could file suit for damages for defamation and state a cause of action requiring them to stand trial before a jury as to their motives or the truthfulness of their statements, regardless of the correctness of the allegations of the complaint or the merits of the cause. Such a rule would tend to deprive the insurance department of the privilege of candor and full disclosure as to qualifications, competence and trustworthiness of agents of insurance companies.

██ Under the statute and decisions above discussed, the letter sued on is, in my opinion, a privileged one, uttered on a privileged occasion, by a privileged person, to one within the privilege.

For the foregoing reasons the motion of the defendant for summary judgment should be granted, and

It is so ordered.