Henry FINK, Plaintiff,

v.

The SHERIDAN BANK OF LAWTON, OKLAHOMA, Westgate Development Company, Inc., Robert S. Sprague, Paul Sprague and David Sprague, Defendants.

Civ. No. 65-169.

United States District Court
W. D. Oklahoma.
Sept. 28, 1966.

Andress, Woodgate, Richards & Condos, Dallas, Tex., for plaintiff.

Rhoads, Ashton & Johnson, Russell G. Jones, Jennings & Beauchamp, Lawton, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is a suit based on an alleged civil conspiracy. The plaintiff asserts that the defendants herein conspired to wrongfully deprive him of his equity or rights in 13½ shares of stock of the defendant, Westgate Development Co., Inc. (Westgate) and a $3500.00 promissory note from Westgate made payable to him.

The Court finds from the evidence that the abovementioned stock and promissory note were pledged by the plaintiff with the defendant, the Sheridan Bank of Lawton (Bank) as collateral for a promissory note. The plaintiff's former wife was also obligated to the Bank on the said note and had pledged like security in the form of Westgate stock and a Westgate promissory note both of which she owned. The plaintiff and his wife, together with the defendants Sprague, owned all of the stock of Westgate. The stock ownership among them was one-third to the plaintiff and his former wife and two-thirds to the Spragues. The defendant, Robert S. Sprague, had given the Bank a guaranty in favor of the plaintiff and his former wife in the amount of $6,000.00 which applied to the obligation of the plaintiff and his former wife to the Bank.

After the foregoing had transpired the plaintiff and his wife experienced serious domestic difficulties. The plaintiff left Lawton, Oklahoma, and removed himself to Dallas, Texas, in April, 1964. This resulted in a divorce action being filed in Lawton by the wife on September 15, 1964. The defendant, Warren H. Crane (Crane) was engaged by the plaintiff as his counsel in the divorce matter. The defendants Sprague intervened in the Fink divorce proceeding and asked for liens in the matter against assets of the plaintiff and his wife by

virtue of the abovementioned guaranty and other obligations which the defendants Sprague had undertaken on behalf of the plaintiff and his wife. The divorce action resulted in a four-day trial in November, 1964, with the court taking the matter under advisement. On December 23, 1964, the court called the attorneys of record to his chambers and announced his decision orally. The attorney for the intervenors Sprague could not be located and was not in attendance. The oral decision of the court allowed the liens requested by the intervenors Sprague against the Finks and granted a divorce with property division. The attorney for Mrs. Fink was to prepare the formal decree of divorce. On December 29, 1964, the attorney for Mrs. Fink submitted a Decree of Divorce to the defendant Crane as attorney for Mr. Fink, which after being approved by both these attorneys was presented to and signed by the court and filed in the case. This Decree of Divorce failed to make any mention of the liens allowed the defendants, Sprague. When it was discovered later in the day that the liens of the defendants, Sprague, were not included in the original decree of divorce the same was on December 30, 1964, corrected by an amendment to the decree signed by all the attorneys and by the court and filed in the case. The defendant Crane as his attorney, informed the plaintiff herein of the Sprague liens and did so first when he called him by long distance phone on December 28, 1964, and advised him of the oral decision of the court and next on December 29th or 30th, 1964, when the plaintiff personally came to Lawton and again on December 31, 1964, when the plaintiff came to his office enroute from Oklahoma City through Lawton to Dallas, Texas. The plaintiff also knew of the Sprague liens inasmuch as he knew of the Sprague petition in intervention in his divorce case, heard the evidence regarding the same at the trial, offered nothing in opposition thereto, and in 1965 in connection with various matters the Sprague liens were discussed with his attorney on several occasions.

In January, 1965, the defendants Sprague, through their attorney, made an offer to the plaintiff and his wife, through their attorneys, to purchase or acquire their stock in Westgate. The offer was $10,000.00 cash to each, payment of their obligation to the Bank (approximately $14,000.00) and to hold them harmless on two other matters in which they were obligated. The offer was not accepted because Mrs. Fink demanded that the plaintiff's $10,000.00 be placed in escrow pending final determination of the appeal of their divorce case. Mrs. Fink made interest payments on the obligation to the Bank and the same was extended by the Bank to April 1, 1965, but thereafter became in default.

Mr. Fink's Motion for a New Trial in the divorce case was overruled on January 20, 1965. Mr. Fink directed his attorney to appeal the case but only as to the property division made between himself and wife. On June 9, 1965, Mr. Fink engaged other counsel to perfect the appeal of the divorce case and Crane was so advised by letter of that date. The appeal was eventually dismissed by the appellate court by reason of a gap in obtaining necessary extensions of time to perfect the same and a late filing of the same.

On May 4, 1965, the defendants Sprague, through their attorneys, renewed their offer to obtain the stock of the plaintiff and his former wife in Westgate. This offer was communicated to the plaintiff herein by his attorney, Crane. The plaintiff immediately came to Lawton and looked into the matter. Plaintiff stated that he needed time to consider the offer. On May 7, 1964, the First National Bank of Euless, Texas (Texas Bank), called the defendant Bank and asked that the stock of the plaintiff, and if possible also the stock of his former wife, in Westgate be forwarded to the Texas Bank with draft attached to cover the amount owed the Bank by the plaintiff and his former wife on the Bank note. The Bank, which on December 31, 1964, had received and acknowledged receipt of a copy of the amend-

ment to the divorce decree which provided for the liens of the defendants, Sprague, advised the Texas Bank that the request could not be granted because there were other liens or claims against the collateral. At the request of the Texas Bank, the defendant Bank agreed to find out the amount necessary to clear the stock. The Bank called the defendant, Robert S. Sprague, and requested from him the amount necessary to satisfy the Sprague liens. This information was not readily available and required the assistance of an accountant. On May 10, 1965, the Spragues by virtue of their liens and the guaranty, paid the amount owed the Bank by the plaintiff and his former wife and obtained the collateral which included the Westgate stock and promissory notes. The Bank on May 10, 1965, notified the Texas Bank of this development and also notified Mr. and Mrs. Fink.

The liens of the defendants, Sprague, on the Westgate stock, were foreclosed after due notice and the stock was purchased by them at the foreclosure sale on June 9, 1965, for the sum of $39,652.87. Notice of this sale was furnished to the plaintiff and to the defendant Crane as attorney for the plaintiff. This attorney forwarded the notice he received to the plaintiff in Texas. The attorney for the defendants, Sprague, mailed a copy of the notice of the foreclosure sale to the plaintiff in Texas, which notice was not returned. The plaintiff did not attend the sale and made no bid or other attempt to redeem or purchase the stock from the defendants, Sprague, or at the sale.

After the foreclosure sale, the attorneys for the Finks caused garnishments to be issued for their unpaid legal fees in the divorce case against certain of the proceeds of the foreclosure sale which remained after all obligations against the stock and notes were satisfied and they realized a portion of their legal fees by these garnishments.

The defendant, Crane, did not do business with the Bank nor know any of the officers or employees, and met the Bank president for the first time at the trial hereof. The defendant, Crane, had done no business with Westgate and knew none of the Spragues. He met Robert S. Sprague for the first time at the trial hereof.

With reference to the foregoing findings by the Court, only a few of the same are in dispute. The plaintiff claims his attorney did not advise him of the amended decree of divorce containing the Sprague liens and he did not learn of the same until after May 14, 1965. As aforesaid, the Court believes and finds that the plaintiff knew of the Sprague liens in late 1964. The plaintiff also claims that the Bank, upon receiving the request from the Texas Bank on behalf of the plaintiff to forward the Westgate stock to the Texas Bank with draft attached, disclosed this fact to the Spragues who had liens against the stock inferior to that of the Bank. The defendant Bank denied that any such disclosure was made but it only requested of the Spragues the amount needed to satisfy their liens. Mr. Robert S. Sprague testified to the same effect, and further testified that prior to receiving the call from the defendant Bank as to the amount necessary to satisfy the Sprague liens, the Spragues, through their attorney, had commenced negotiations in a second attempt to purchase the Fink stock and that inasmuch as the Fink loan with the Bank was in default by over a month, the Spragues had decided that they must either purchase the Fink stock without delay from the Finks or pay off the prior lien on the same held by the Bank and foreclose their liens. The plaintiff had no direct evidence on this point but only circumstantial evidence. As aforesaid, the Court believes and finds that the Bank did not disclose the offer of the plaintiff through the Texas Bank but only sought the amount necessary to satisfy the Sprague liens, which was done by the Bank at the request of the Texas Bank for the plaintiff.

■ A civil conspiracy is a combination of two or more persons by some concerted action to accomplish some

criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. 16 Am.Jur.2d, Conspiracy, page 149; Hughes v. Bizzell (1941), 189 Okl. 472, 117 P.2d 763. The burden of proof is upon a plaintiff in a civil conspiracy case to prove the conspiracy by a preponderance of the evidence. Circumstantial evidence may be sufficient for this purpose. The circumstances, however, must do more than create a mere suspicion of the existence of a conspiracy. They must be such that ordinary men of sound mind may reasonably deduce therefrom that there was a conspiracy. 16 Am.Jur.2d, Conspiracy, page 156. In Nissen v. Andres (1936), 178 Okl. 469, 63 P.2d 47, it is stated:

"In order to establish a conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. The evidence must do more than raise a suspicion. It must lead to belief."

And so long as parties seek only to further their own fair interest, they cannot be said to be co-conspirators and they will not be liable for any merely incidental damage to another. Bliss v. Southern Pacific Co. (1958), 212 Or. 634, 321 P.2d 324. This is to say that there can be no conspiracy where the acts complained of, and the means employed in doing the act are lawful. Hughes v. Bizzell, supra; Walker v. Mills (1938), 182 Okl. 480, 78 P.2d 697; Shaw v. Cross (1921), 83 Okl. 273, 201 P. 811.

■ The Judge of the divorce court testified that he allowed the Sprague liens in his oral decision in the case rendered on December 23, 1964; that he did not carefully read the divorce decree presented to him and signed on December 29, 1964, and did not notice that the Sprague liens were not included therein;

that when the omission was brought to his attention he corrected the same nunc pro tunc by the amendment to the divorce decree entered the following day, December 30, 1964. The Court finds this testimony to recite the true facts. The Sprague liens were allowed by the Court in the decision he rendered on December 23, 1964, and the Court thereafter corrected the decree and record to speak his true decision. No intervening rights of anyone were affected. The Court finds that the amendment to the decree of divorce was not accomplished as a part of a conspiracy between the defendants herein but was done to properly correct the record and properly recite the decision of the Court. In these circumstances and under these findings it is quite clear that the divorce court had not only the authority but the duty to enter the amendment to the divorce decree so that the record correctly reflected his decision in the case. Taliaferro v. Bates (1927), 123 Okl. 59, 252 P. 845; Peoples Electric Co-op v. Broughton (1942), 191 Okl. 229, 127 P. 2d 850; Adamson v. Brady (1947), 199 Okl. 55, 182 P.2d 748; Mabry v. Baird (1950), 203 Okl. 212, 219 P.2d 234; Hawks v. McCormack (1937), 180 Okl. 569, 71 P.2d 724; Parks v. Briggs (Okl. 1954), 268 P.2d 283; Woodmansee v. Woodmansee (1929), 137 Okl. 112, 278 P. 278.

The plaintiff claims herein that the Bank, the Spragues, Westgate (owned by the Spragues) and Crane conspired to deprive him of his equity or rights in 13½ shares of Westgate stock and a promissory note from Westgate to him by criminal or unlawful means.

■ From the evidence and all the circumstances of this case the Court finds and concludes that a civil conspiracy did not exist between the defendants as alleged by the plaintiff and that the plaintiff has failed to establish the same under his burden of proof.

As previously stated herein the Court finds that the plaintiff knew of the Sprague liens very shortly after their allowance by the Court; that the Bank

did not inform the Spragues of the plaintiff's attempt to pay his obligation to the Bank and obtain the Westgate stock and note; that the Spragues in January, 1965, and again in May, 1965, (before the above attempt by the plaintiff to pay his note and obtain his Westgate stock and note from the Bank) had endeavored openly to acquire the plaintiff's stock to protect themselves, their liens and their interests; that the plaintiff knew of both these offers and endeavors by the Spragues; that Crane did not know anyone at the Bank and did not know any of the Spragues; that no communications passed between Crane and the Spragues or the Bank.

The Court further finds that the defendants were acting in their own fair interests and were taking proper and legal steps to protect themselves and their liens, interests and rights all of which liens, interests and rights the plaintiff was fully aware.

Instead of establishing a civil conspiracy between the defendants the evidence presented to the Court clearly reveals that the plaintiff, after experiencing domestic difficulties with his wife, left the state, allowed his obligation to the Bank to fall in default, refused the offers of the Spragues to acquire his stock with knowledge of their liens and rights and interests in Westgate and in said stock and in due course caused or forced them to pay off the Bank to protect themselves, their liens, rights and interests in the premises. The plaintiff is guilty of neglecting his affairs.

The defendants Sprague had a legal right under their inferior liens to redeem the Westgate stock and notes from the Bank who possessed a superior lien thereon and thereby be subrogated to all the benefits of the Bank. 42 O.S. A. § 19.

It appears, and the Court finds that the foreclosure sale which followed the Sprague redemption and subrogation was validly held. The Court further finds from the evidence that the amount paid for the stock and notes by the Spragues at the foreclosure sale was fair and reasonable and conformed to or exceeded the fair market value of the same.

The Court further finds and concludes that Crane, after not being paid his attorney fee for the divorce case by the plaintiff, and after being replaced by other counsel regarding the appeal of the divorce case, took legal and proper steps to obtain his attorney fee by garnishment from assets of the plaintiff. While Crane may have been inadvertent in fully protecting the plaintiff's appeal rights in his divorce case, the Court believes and finds that any such inadvertence by Crane was not a part of a civil conspiracy with the other defendants or anyone else.

Having failed to establish the alleged civil conspiracy between the defendants, the plaintiff is not entitled to recover herein. Counsel for the defendants will prepare a judgment to this effect. Rule 58, Federal Rules of Civil Procedure, 28 U.S.C.A.