**David FLEMING, Plaintiff–Appellant,**

v.

**XEROX CONNECT, INC.,**
**Defendant–Appellee.**

No. 01–5411.

United States Court of Appeals, Sixth Circuit.

Oct. 30, 2002.

Before MERRITT, SILER, and DAUGHTREY, Circuit Judges.

MERRITT, Circuit Judge.

In this diversity action brought under Tennessee common law, the plaintiff contends that he was fired in retaliation for his refusal to remain silent about what he now describes as defendant Xerox Connect Inc.'s criminal extortion of its client, Columbia Physician Services, for money payment over and above an agreed contract price, in violation of Tenn.Code Ann. § 39–14–112,[1] and its criminal disruption of Columbia's access to its data through a computer software system, in violation of Tenn.Code Ann. § 39–14–602.[2] Xerox counters that its actions were part of a legitimate contract dispute between two sophisticated parties—a far cry from extortion and computer fraud—and that the plaintiff was fired for incompetence and poor management skills. The district court held that, given the ongoing contract dispute between Xerox and Columbia regarding the scope of Xerox's responsibilities under its fixed-price contract, Xerox's actions were part of a legitimate business dispute and did not constitute clear violations of Tennessee's extortion and computer fraud statutes. We agree with the district court.

Recent decisions of the Tennessee Supreme Court have clarified somewhat the contours of the so-called common-law "whistleblower" exception to the at-will employment doctrine. At oral argument, counsel for the plaintiff emphasized the court's recent statement in *Guy v. Mutual of Omaha Insurance Co.* that the court's inquiry "is not limited to whether a particular law or regulation has been violated [, but rather] focuses on whether some important public policy interest embodied in the law has been furthered by the whistleblowing activity." 79 S.W.3d 528, 538 (Tenn.2002) (internal quotations omitted). By calling our attention to the above-quoted language, the plaintiff seems to suggest that, to survive summary judgment, he need not demonstrate that Xerox Connect in fact violated the statutes. Rather, he need only demonstrate that, by objecting to coworkers and his supervisor about what he believed were improprieties relating to a computer system shutdown, the plaintiff has advanced an important public policy interest. In our view, however, the plaintiff misconstrues *Guy*.

Under the whistleblower variant of the public policy exception, employees are protected from discharge in retaliation for speaking out about illegal activities if such conduct furthers an important public policy interest embodied in the law. *See id.* In *Guy*, the plaintiff whistleblower did not claim that the employer violated the law. Rather, the court was faced with an insurance agent who had been discharged by his employer after he reported the unlaw-

1. Under Tennessee law, a person commits extortion "who uses coercion upon another person with the intent to: (1) Obtain property, services, any advantage or immunity; or (2) Restrict unlawfully another's freedom of action." T.C.A. § 39–14–112(a). We note at the outset that "[i]t is an affirmative defense to prosecution for extortion that the person reasonably claimed ... [a]ppropriate compensation for property or lawful services." *Id.* § 39–14–112(b).

2. In Tennessee, whoever "knowingly, directly or indirectly, accesses ... [any] computer software, computer program, data, computer, computer system, computer network, or any part thereof, for the purpose of ... [o]btaining money, property, or services for oneself or another by means of false or fraudulent pretenses, representations, or promises" is subject to criminal penalties. T.C.A. § 39–14–602(a). A person is likewise subject to criminal penalties who "who performs an act which is responsible for the disruption of any computer, computer system, computer network, computer software, program or data which resides or exists internal or external to a computer, computer system or computer network." *Id.* § 39–14–602(b)(2).

ful activity of another insurance agent. As the basis for the public policy violation element of his claim, the plaintiff relied on provisions of Tennessee law listing the various grounds for which the Insurance Commissioner can suspend or revoke an agent's license. According to the plaintiff, these statutory provisions evidenced the public policy in this state "with respect to protecting the public from the fraudulent activity of insurance agents." *Id.* at 537. The employer argued that because the employer itself had not violated any statute or regulation, and because the employee was under no statutory duty to report the unlawful activity, then the plaintiff had failed to establish the "clear public policy" necessary to form the basis of a retaliatory discharge claim. The Tennessee Supreme Court agreed with the plaintiff, finding that although the employer itself had not violated any statute or regulation, there is in this state a recognized public policy interest behind "encouraging insurance companies and others interested to bring to the attention of the Insurance Commissioner the derelictions of agents." *Id.* at 538 (internal quotations omitted) (citing *Independent Life Ins. Co. v. Rodgers,* 165 Tenn. 447, 55 S.W.2d 767, 770 (1933)). In reaching its conclusion, the court reaffirmed the primary foundation of the public policy exception: "Our inquiry ... is not limited to whether a particular law or regulation has been violated; rather, our inquiry focuses on whether some important public policy interest embodied in the law has been furthered by the whistleblowing activity." *Id.* (internal quotations omitted). *Guy's* focus on the furtherance of the *public good* sets the stage for two significant developments in the court's efforts to define the common-law retaliatory discharge claim: (1) an employee whose "whistleblowing" is intended to expose the illegal conduct of someone *other than* the employer can maintain a common-law

cause of action for retaliatory discharge; and (2) an employer's discharge can violate a public policy interest evidenced by *a judicial declaration* of the law.

■ Unlike the plaintiff in *Guy,* however, the plaintiff here contends that his own employer violated two specific criminal statutes. He does not attempt to locate the source of the public policy at issue outside his employer's alleged statutory violations. Therefore, the public policy basis for his claim for retaliatory discharge rests squarely on the alleged statutory violations and his decision to speak out in opposition to them. Accordingly, whether Xerox's actions could reasonably be viewed as clearly constituting either offense remains the key to whether the public policy element of the tort of retaliatory discharge has been satisfied. *See Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988) (holding that the plaintiff must show "a clear violation of some well-defined and established public policy").

■ Viewing all the evidence presented in the light most favorable to the plaintiff, the plaintiff has not demonstrated that Xerox violated Tennessee's extortion and computer fraud statutes. At the very most, the facts demonstrate nothing more than that Xerox was a party to a fixed-price contract to implement a certain software program for Columbia, but before the project was completed, Xerox cut off Columbia's access to the software program because unauthorized persons at Columbia had accessed the software code and broken it. Although Xerox was under a fixed-price contract to implement the software program, the plaintiff himself believed that Columbia should pay an additional amount for the needed repairs. In short, the evidence shows that even the plaintiff believed that Xerox had a legitimate business dispute regarding responsibility for the

costly repairs to the computer software system. Faced with the choice of possibly not getting paid at all for failure to deliver a working program or refusing to deliver a working program in order to renegotiate a new price given the additional costs due to the other party's admittedly unauthorized access, Xerox chose the latter. This conduct does not come close to extortion or a criminal computer offense under Tennessee law. It is a contracting party's private economic decision to risk liability for breach of contract over further uncompensated repairs. Risking potential liability for breach of contract, without more, does not give rise to a common-law whistleblower action in Tennessee. We do not need to decide whether Justice Holmes was right or wrong in his epigram about contract law, "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else." *See* Oliver W. Holmes, *The Path of the Law*, 10 Harv. L.Rev. 457, 462 (1897), *reprinted in* 110 Harv. L.Rev. 991, 995 (1997). But we do agree that breach of contract alone "means a prediction that you must pay for damages—and nothing else" in the way of a whistleblower action.

In sum, we agree with the district court that no reasonable factfinder could find that Xerox was clearly engaged in illegal conduct that jeopardized the public good. As a result, the plaintiff's "refusal to remain silent" about a possible breach of contract could not have furthered the kind of important public policy interest contemplated by the whistleblower exception to the employment-at-will doctrine. On this ground alone, summary judgment in favor of the employer is appropriate. As a result, we need not detail and address all of the "he-said-she-said" factual disputes concerning the plaintiff's discharge and the performance of his job with Xerox, nor do we address his supervisor's and his fellow employees' dissatisfaction with his work.

Accordingly, the judgment of the district court is AFFIRMED.

