196 A.2d 406 (1963)
Max CORDER, George Robbins, Ernest Macklin, Crerar Bennett, Composing the Board of Education of the Milford Special School District, Plaintiffs,
v.
CITY OF MILFORD, a municipal corporation of the State of Delaware, Defendant.
Superior Court of Delaware, Sussex.
December 5, 1963.
John E. Messick, Georgetown, for plaintiffs.
Houston Wilson, Georgetown, for defendant.
*407 CHRISTIE, Judge.
In this action, the plaintiffs who constitute Board of Education of the Milford Special School District, a State agency, seek to recover building permit fees which have been paid to the defendant municipality in connection with the School Board's construction projects.
The permits in question were obtained pursuant to the Milford Building Code which provides that:
"(a) No building or structure shall hereafter be built, enlarged altered or moved without a permit from the building official. * * *
"(b) The building official shall inspect all buildings or structures during construction to see that the provisions of law are complied with and that construction is prosecuted safely."
(Section 3, Milford Building Code)
The school construction has been carried on and completed in compliance with the terms of the municipal building code and was inspected from time to time by the municipal building inspector. Plaintiffs by this suit seek only a refund of the fees paid to obtain building permits.
The broad question to be resolved is whether the valid building regulations of a municipal corporation are applicable to school buildings constructed within a municipality as a part of the public school system of the State. If such regulations are applicable, the fees here charged are not subject to refund since it is undisputed that the fees were reasonable and did not even cover the cost of the inspections which were made.
The City of Milford holds a charter enacted by the General Assembly under which it is duly authorized to enact ordinances to protect the health of the population, to provide for zoning codes and to control construction through the use of building permits. 37 Del.Laws Ch. 162 at pages 596-599 (1931). See also Delaware Constitution Art. 2, Section 25, Del.C.Ann.; 22 Del.C. Ch. 3; 16 Del.C. Ch. 79.
On the other hand the Delaware Constitution states that "[t]he General Assembly shall provide for the establishment and maintenance of a general and efficient system of free public schools * * *" (Article 10, Section 1). The Supreme Court has described this constitutional provision as granting plenary power over free public schools to the General Assembly and has stated that the building of a school-house is subject to that power. DuPont v. Mills, 9 W.W.Harr. 42, 39 Del. 42, 196 A. 168, 119 A.L.R. 174 (1937).
Pursuant to the constitutional authority vested in it the General Assembly has enacted an education code which provides for a State Board of Education to administer and supervise the free public schools and for Boards of Education in each Special School District with authority to undertake the general administration and supervision of the schools within such districts. 14 Del.C. §§ 101-142; 901-979. The responsibility for the actual construction of schools rests with a School Building Commission which consists of the members of the local School Board and two ex-officio members designated by the State Board of Education from the State Board's membership. See 50 Del.Laws, Ch. 529; 51 Del. Laws, Ch. 283 and 52 Del.Laws, Ch. 345.[*]
*408 Among the many specific powers granted to the State Board of Education by statute is the power to adopt rules and regulations "which, when prescribed and published, shall be binding throughout the State * * (1) Governing the hygienic, sanitary and protective construction of school buildings * * *." 14 Del.C. § 122.
Thus by statute, the school authorities are authorized to adopt rules and regulations governing "hygienic, sanitary and protective construction of school buildings" but the municipality has general police powers and specific authority to enforce building codes to protect against health hazards and fire.
Both the City of Milford and the Milford Special School District are creatures of the State and each draws its powers directly or indirectly from the State Constitution or from statutes enacted by the General Assembly. Subject to the constitutional provisions the General Assembly was free to assign the powers here under discussion to the school authorities or to the municipal authorities.
Since the General Assembly appears to have made a dual grant of authority, the Court must decide whether the legislation intended (1) to create dual responsibility as to some phases of school construction involving both city and state, with the city free to make and enforce reasonable regulations as to health and safety, or (2) to give the school authorities such exclusive jurisdiction over all the details of construction of public school buildings as would preclude local regulation even where the school authorities do not fully implement their powers in respect to health and safety regulations.
The issue here raised has not heretofore been resolved judicially in Delaware. Many courts in other jurisdictions have passed upon similar issues. Conflicting trends of judicial thinking on the subject and several cases are discussed in a helpful case note "Attempted Regulation of State School and University Construction under Municipal Building Codes", 109 Univ. of Pa. Law Rev. 903 (1961).
Most of the cases start with the express or implied proposition that the legislature is free to grant the power either to the state school authorities or to the municipal authorities and the courts are called upon to decide which the legislature intended to do. A pair of California cases illustrate the two viewpoints most often taken by the courts.
In 1913, the California Supreme Court held that a public school board's statutory authority to construct and control school buildings did not preclude local regulation of school construction through municipal building codes. Pasadena School District v. City of Pasadena, 166 Cal. 7, 134 P. 985, 47 L.R.A.,N.S., 892 (1913). In that case the court noted that the general law on education did not require school authorities to adopt sanitary regulations or regulations for the public health, comfort and safety. It was pointed out that education authorities may be primarily concerned with the health and safety of pupils whereas the local building codes are also importantly concerned with the interests of the inhabitants in general. It is cases taking this approach on which defendant relies.
In 1956 the same court decided that a legislative grant of power to control school construction precluded the application of local building codes. Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574 (1956). In the Hall opinion, the court noted the existence of a detailed education code which it found to have completely occupied the field of educational construction so as to leave no room for the application of local codes. Plaintiffs base their argument on cases taking the same approach as the Hall case.
In Cedar Rapids Community School District, Linn County v. City of Cedar Rapids, 252 Iowa 205, 106 N.W.2d 655 (1960) the Supreme Court of Iowa cited and followed the Pasadena case distinguishing the Hall case on the ground that the Iowa Superintendent *409 of Schools had limited authority and had in any event prescribed no building code for schools. The Court also held that the application of a municipal building code to school construction did not conflict with the statutory authority granted to the school district and stated:
"It is urged, to subject the school district to the city's building code would allow the city to exercise control over the school district and usurp the power of the superintendent to approve the plans. This is not the result. Building codes, exclusive jurisdiction of school matters, and approved plans for a school building deal with different subject matter. Building codes are police measures to protect health and safety. In no sense are they school matters. The control of the plans of the building as well as the actual operation of the school building is left in the hands of the school authorities. The planning of the building in all matters other than matters covered by the building codes is left with the school authorities."
Many of the recent decisions hold against the application of local building codes. Sovereign rights of the state and the statutory authority of the state agency are often mentioned and frequently the statutory roots of the municipal ordinance are ignored. In almost all such cases the court was confronted with a uniform state code of general application which came into conflict with a local code.
The Delaware State Board of Education has not adopted a detailed building code for school construction. The local school boards and building commissions are required to submit the preliminary and final plans and specifications for school buildings to the State Board for approval. It may be assumed that the State Board would withhold approval of any project which it found to be deficient as to health and safety features. In practice, however, the State Board has welcomed rather than resisted the application of local building code requirements as a supplement to its own requirements.
On the local level building commissions have customarily required that the contractor chosen to construct the school obtain local building permits, follow the applicable codes and submit to the required inspections by municipal authorities. In Delaware supervision of construction provided by the State and local school authorities is not treated and never has been treated as a substitute for routine inspections to assure compliance with local codes.
Under our Constitutional provisions and statutes the State through its duly constituted boards of education may exercise complete control over every phase of school construction leaving no room whatsoever for the application of local codes or for inspections by local authorities. The State and local school authorities have, however, permitted an administrative practice to develop which involves full compliance with local codes and payment of the fees directly connected therewith.
It is apparent that the State and local school authorities have not fully occupied this regulatory field. It is improbable that the legislature intended that public schools should meet less stringent health and safety requirements than other buildings. I find the approach taken by the Pasadena and Cedar Rapids cases to be applicable here. I hold that the otherwise applicable local building codes continue to apply to public school construction until displaced through more complete implementation by the educational authorities of their existing statutory authority.
The local school board has failed to establish that Milford has a legal duty to return the license fees. Judgment will be entered for the defendant municipality.
NOTES
[*] In the consideration of this case I have assumed, without thereby deciding, that a suit by the School Board is proper although the permits were actually obtained by the building contractor pursuant to contract with the School Building Commission.