No. 74–1418. BUCHANAN ET AL. *v.* EVANS ET AL. Affirmed on appeal from D. C. Del.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join as to Parts I and II–B, dissenting.

Appellants insist that the judgment of the District Court is wrong under our holding in *Milliken* v. *Bradley*, 418 U. S. 717 (1974), while appellees insist that it is consistent with that case. But this case comes here as an appeal from an order of a three-judge District Court enjoining the enforcement of a state statute, 393 F. Supp. 428 (Del. 1975), a question not even present in *Milliken*. The three-judge District Court by its order of April 16, 1975, enjoined appellants from relying upon [1]

---

[1] Appellees contend, not implausibly, that no injunction was in fact issued in this case, and that the only action of the District Court with respect to Delaware's Educational Advancement Act of 1968 (EAA) was to declare certain provisions unconstitutional. They rely on *Gunn* v. *University Committee*, 399 U. S. 383 (1970), and *Goldstein* v. *Cox*, 396 U. S. 471 (1970), to support their conclusion.

If appellees are correct on this point, of course, appellants should have taken their appeal to the United States Court of Appeals for the Third Circuit rather than to this Court. *Gonzalez* v. *Employees Credit Union*, 419 U. S. 90 (1974).

But in *Gunn, supra,* this Court held that "there was no order of any kind either granting or denying an injunction . . . ." 399 U. S., at 387. *Goldstein* v. *Cox, supra,* held that a District Court's denial of plaintiffs' motion for summary judgment was not appealable to this Court under 28 U. S. C. § 1253 where plaintiffs in their complaint had sought no preliminary injunction.

Here the operative language of the District Court's order addressed to appellants was that "[i]n preparing any inter-district plan, the Defendant State Board of Education is enjoined from relying upon those provisions of [the EAA] found unconstitutional by this Court." There is thus an injunction, and it is against the enforcement of certain provisions of a state statute. While, for reasons

provisions of a Delaware statute which by their terms had expired six years earlier. Because in doing so I believe the District Court decided an issue that is demonstrably moot, I would reverse its judgment on this point. Since the additional question of whether the *Milliken* issues briefed by the parties are properly before us under any conceivable theory is one which veritably bristles with jurisdictional problems, I would note probable jurisdiction and set the case for argument on these points. The Court's summary affirmance, in my opinion, not only wrongfully upholds an erroneous injunction issued by the District Court, but because of the difficult jurisdictional questions present in this case leaves totally beclouded and uncertain what is decided by that summary affirmance.

I

The challenged Delaware statute, known as the Educational Advancement Act (EAA), was enacted by the legislature in June 1968 "to provide the framework for an effective and orderly reorganization of the existing school districts of this State through the retention of certain existing school districts and the combination of other existing school districts." Del. Code Ann., Tit. 14, § 1001 (1975).[2]

which follow, I believe that the District Court was wrong in passing on the merits of the statute, that consideration is an argument going beyond the issue of whether or not its order was in fact an injunction as that term is used in § 1253.

[2] The preamble provided as follows:

"The purpose of this chapter is to provide the framework for an effective and orderly reorganization of the existing school districts of this State through the retention of certain existing school districts and the combination of other existing school districts. It is the purpose and intent of the General Assembly to establish the policies, procedures, standards and criteria under which the State Board of Education is authorized to determine and establish the appropriate

Appellant Delaware State Board of Education and its members were placed under an explicit timetable by this statute. By September 1, 1968, they were to develop specific criteria for implementing a reorganization plan in accordance with requirements contained in the statute; by October 24, 1968, they were required to develop a plan conforming to these criteria; and in subsequent months they were to submit the plan to local boards of education, and to receive and pass on their objections to the proposed plan. Del. Code Ann., Tit. 14, §§ 1003, 1004 (a) and (b) (1975). Section 1005 provided that on July 1, 1969, "all proposed school districts contained in the plan as adopted [under § 1004] shall be constituted and established as reorganized school districts." [3]

Section 1004 (c) contained an exclusion which was the basis of appellees' constitutional attack on the statute.[4] It provided that, in contrast to the wide discretion

reorganized school districts and to implement the reorganization thereof."

[3] Section 1002 (2) defined this term:

" 'Reorganized school district' means a school district which is constituted and established in accordance with the provisions of this chapter, including . . . where applicable, a school district resulting from a consolidation or division in accordance with the provisions of this chapter."

[4] In pertinent part, § 1004 (c) provided:

"On or before March 1, 1969, the State Board of Education shall meet and adopt a final plan of reorganization of school districts which it deems wise and in the best interests of the educational system of this State; provided, that no plan of reorganization of school districts shall be adopted which fails to meet the following requirements:

.          .          .          .          .

"(2) Each proposed school district including more than 1 component former school district shall have a pupil enrollment of not less than 1900 nor more than 12,000 in grades 1 through 12. 'Pupil enrollment' as used in this subsection means enrollment as of September 30, 1968. Excluding vocational-technical districts there

conferred upon the state board with respect to other school districts in the State, the city of Wilmington should constitute a single school district. The District Court sustained appellees' claim that this provision invidiously discriminated against Negroes, finding that although there had been no intent to do so on the part of the legislature, the effect of the statute was to lock in Negro schoolchildren within the Wilmington school district in a way that might not have resulted if that district had been subject to the state board's discretionary power to consolidate as were the remaining districts in the State under the 1968 legislation. The District Court summarized this portion of the EAA in the following language:

> "The key reorganization provisions of the Act provided an *exemption* of approximately one year from the long-standing requirement in Delaware law that consolidation of contiguous school districts must be approved by a referendum in each of the districts affected. 14 Del. C. §§ 1001–05. In other words, for a *limited* time, the State Board of Education was authorized to consolidate school districts according to the dictates of sound educational administration and certain statutory criteria. The Wilmington School District was explicitly excluded from the reorganization powers of the State Board by § 1004 (c)(4): 'The proposed school district for the City of Wilmington shall be the City of Wilmington with the territory within its limits.' Wilmington was also excluded implicitly from any consolidation plan by § 1004 (c)(2), which limited

---

shall be no fewer than 20 nor more than 25 reorganized school districts.

   .      .      .      .      .

"(4) The proposed school district for the City of Wilmington shall be the City of Wilmington with the territory within its limits."

the maximum pupil enrollment in any proposed school district to 12,000." 393 F. Supp., at 438–439 (emphasis added).

The difficulty with the District Court's holding, quite apart from its constitutional merits, is that the statute authorized action by appellant state school board only until July 1, 1969. As the District Court explicitly found, the reorganization powers from which Wilmington was excluded lapsed on that date. After that date, neither the city of Wilmington nor Negro schoolchildren attending schools in the city could suffer any discrimination as a result of the *state board's enforcement* of the *statute:* the state school board no longer had unilateral power to effect consolidation. That step can be accomplished only by approval of the voters in the affected school districts by referendum. Under Del. Code Ann., Tit. 14, § 1027 (1975), while a voter-approved consolidation plan can apparently be rejected by the state board in its discretion, a voter-rejected consolidation plan cannot be resurrected by the state board.[5]

Thus by July 1, 1969, the state board had been relegated, Cinderella-like, to the status which it occupied prior to the 1968 legislation. The provision of § 1004 (c), limiting the authority of the state board with

---

[5] Appellees had originally claimed that § 1027 implicitly excluded Wilmington from its operation, 379 F. Supp. 1218, 1219 n. (Del. 1974), and therefore contributed along with § 1004 (c) to the alleged unconstitutional confinement. But the District Court in its present decision found that under § 1027 "consolidation of Wilmington with neighboring school districts is still possible by . . . referendum." 393 F. Supp. 428, 442 n. 29 (Del. 1975). Section 1026, which sets out a similar mechanism for altering reorganized school district boundaries, does expressly exclude Wilmington. Appellees have not pursued their initial charge that this section also unconstitutionally confined black students, and the District Court did not mention § 1026 in its second opinion. Appellees have not asserted either claim on this appeal, and our inquiry can go only to § 1004 (c).

respect to the school district consisting of the city of Wilmington, was relevant, if at all, at the time this case was heard by the three-judge court, only as a historical fact. Whatever may be the proper weight to be accorded this historical fact in the assessment by a single-judge district court of the factors made relevant in *Milliken,* it was *functus officio* as a part of an operative statute.

A three-judge district court cannot enjoin the operation of a statute which has expired by the time the court's decree is entered. Indeed, so strongly has this Court felt about the necessity for a "live controversy" that it has vacated the judgment of the District Court where the statute was repealed *after* the ruling of that court but before decision here. *Diffenderfer* v. *Central Baptist Church,* 404 U. S. 412 (1972). *A fortiori,* a prayer for restraint against a state officer's enforcement of a statute which expired *prior* to litigation presents a dead issue. The grant of judicial power in Art. III of the United States Constitution limits federal courts to cases or controversies, and a dispute about the constitutionality of a statute which is no longer in effect is moot in the classical sense.

## II

Presumably the Court's summary and unexplained affirmance of the judgment of the District Court upholds its issuance of an injunction against the enforcement of sections of a law which by their own terms have expired. By reason of the summary nature of the Court's action, however, neither the parties nor the District Court can know what additional effect the affirmance here may have. Although the parties have briefed the *Milliken* issues, I believe that there are all but insurmountable jurisdictional difficulties to the Court's reach-

ing them, whether it were to affirm or to reverse the injunctive portion of the District Court's judgment. I would at the very least note probable jurisdiction and hear argument on them in order to make a principled determination as to whether we have authority on this appeal to deal with those issues at all.

## A

On the assumption that the District Court was correct in issuing the injunction against the enforcement of the Delaware statute, an assumption with which I disagree for reasons previously stated, there is the most serious question as to whether the Court could reach the *Milliken* issues even if it wished to do so. This case is here on direct appeal only because 28 U. S. C. § 1253 authorizes such appeal "from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

This language stands in sharp contrast to the language of 28 U. S. C. § 1252, dealing with direct appeals from district court judgments invalidating Acts of Congress, the relevant language of which is:

> "Any party may appeal to the Supreme Court from an interlocutory or final judgment, decree or order of any court of the United States . . . holding an Act of Congress unconstitutional in any civil action, suit or proceeding . . . ."

Construing this language in *United States* v. *Raines,* 362 U. S. 17 (1960), the Court stated that it seemed "to indicate a desire of Congress that the whole case come up . . . ." *Id.,* at 27 n. 7.[6]

---

[6] The Court in *Raines* contrasted the scope of § 1252 with the scope of 18 U. S. C. § 3731, the Criminal Appeals Act. That

By contrast, the much narrower language of § 1253 allows appeal here not from a final judgment or decree but only from "an order granting or denying . . . an interlocutory or permanent injunction . . . ." It is established by the consistent holdings of this Court that this section, together with 28 U. S. C. § 2281, is to be narrowly, rather than broadly, construed. *Gonzalez* v. *Employees Credit Union,* 419 U. S. 90, 98 (1974); *Phillips* v. *United States,* 312 U. S. 246, 248 (1941).

The Court's opinion in *Florida Lime Growers* v. *Jacobsen,* 362 U. S. 73, 76 (1960), is highly instructive on this point. There the issue was whether, in an appeal pursuant to § 1253, this Court and the District Court had jurisdiction to entertain nonconstitutional attacks on the challenged statute as well as constitutional attacks. The Court held that they did. Mr. Justice Frankfurter and Mr. Justice Douglas in dissent contended they did not. I should think that if at the time of the decision in *Florida Lime Growers* it was a fairly debatable question whether this Court and the District Court could entertain nonconstitutional challenges to the very statute against which the injunction was sought, there could be little doubt that neither our jurisdiction nor the jurisdiction of the District Court would extend still further to embrace issues which were independent of and far more extensive than the assumed "present" invalidity of the challenged statute.

Act allowed the Government a right of appeal from particular types of decisions of a district court prior to trial in a criminal case, and the Court in construing it in *United States* v. *Borden Co.,* 308 U. S. 188, 193 (1939), stated that "[t]he Government's appeal does not open the whole case." The language of § 1253, with which we deal, is much more akin to that of the Criminal Appeals Act than it is to that of § 1252. See also *United States* v. *Keitel,* 211 U. S. 370, 397–399 (1908).

## B

Serious as these jurisdictional doubts seem to me, those which flow from the opposite assumption—that the District Court erred in enjoining the enforcement of the provisions of a statute which by their terms had expired—are even more troubling. The prayer [7] seeking

[7] Reopening a desegregation suit that had lain dormant since the mid-sixties, appellees contended that the city's black students were being compelled to attend segregated schools. The claim was three-fold: (1) the state board continued to maintain an unconstitutional dual system in New Castle County, of which Wilmington is a part; (2) the State through various practices, e. g., low-cost housing policies, had enforced or approved public and private discrimination resulting in segregated schools; (3) the portions of the EAA establishing a mechanism for school district consolidation, both created a suspect classification in directing that Wilmington be continued as a single school district and prevented the state board from implementing its Fourteenth Amendment duty to dismantle the dual system.

Since the third prong of appellees' claim assertedly ran against the board's enforcement of a state statute, a three-judge court was empaneled. 28 U. S. C. § 2281. The District Court, in two separate opinions, passed upon the entire complaint. The first decision, in July 1974, found that the geographic zoning plan adopted for Wilmington in 1956 had not been effective in eliminating many racially identifiable schools, and that a unitary system had not been established, a failure chargeable to the state board. See 379 F. Supp. 1218, 1221–1223 (Del.). The latter two contentions, since they related to possible interdistrict relief, were postponed until consideration of the proper remedy. Specifically, the claim that the EAA's exclusion of Wilmington unconstitutionally impeded the dismantling process was deemed premature since drastic intradistrict relief might be curative. The parties were ordered to submit alternative intradistrict and interdistrict plans, the latter to incorporate suburban school districts within the county.

Two weeks later, this Court handed down *Milliken* v. *Bradley,* 418 U. S. 717 (1974), which identified the prerequisites to ordering interdistrict relief. The suburban county districts, at the District Court's invitation, intervened as defendants to contest any proposed

injunctive relief against the enforcement of the Delaware statute was filed in the District Court in this case in 1971. At that time, the provisions of § 1004 (c) ulti-

---

consolidation remedy. They chose to adopt the state board's pleadings and stand on the evidence already of record.

After oral arguments, the District Court rendered the instant decision. Under its reading of *Milliken* the predicate for inter-district relief was "racially discriminatory acts of the state or local school districts [that] have been a substantial cause of inter-district segregation." *Id.*, at 745. So framing its inquiry the District Court found: (1) a percentage of suburban students of both races had, pre-*Brown* v. *Board of Education*, 347 U. S. 483 (1954), traveled into the city to attend segregated schools in Wilmington; (2) the growth of identifiably black schools since *Brown* mirrored the substantial white migration to the suburbs, a demographic shift in part encouraged and assisted by governmental policies, the cumulative effect of which constituted segregative action with interdistrict effects; (3) the passage of the EAA, with its grant of truncated reorganizational power (excluding Wilmington therefrom) to the state board (a) operated not in purpose but in effect to create a suspect racial classification under the Equal Protection Clause, and (b) thus constituted a substantial interdistrict violation under *Milliken*. The District Court concluded as follows:

"Here, the racially discriminatory exclusion of Wilmington prevented the State Board from considering whether sound educational principles dictated a consolidation of Wilmington with other school districts. But for this racial classification, the Board may have consolidated Wilmington with other New Castle County districts, with the result that the racial proportions of the districts would have been altered significantly. Even though the State Board may not have been required to alter the Wilmington District, this Court cannot find that the exclusion from the Board's powers was racially insignificant. On the contrary, the reorganization provisions of the [EAA] played a significant part in maintaining the racial identifiability of Wilmington and the suburban New Castle County school districts. In short, the General Assembly 'contributed to the separation of the races by . . . redrawing school district lines,' Milliken v. Bradley, [418 U. S.,] at 755 . . . (STEWART, J., concurring).[*]" 393 F. Supp., at 445–446.

Footnote [*] elaborated on "redrawing":

"School district reorganization pursuant to [the EAA] amounted

mately struck down by the District Court had been *functus officio* since 1969. I would think that our recent treatment of nonjusticiability in a three-judge court context applies equally to the defect of mootness at the time injunctive relief is sought:

> "[T]hat the complaint was nonjusticiable [is] not merely short of the ultimate merits; it [is] also, like an absence of statutory subject-matter jurisdiction, a ground upon which a single judge could have declined to convene a three-judge court, or upon which the three-judge court could have dissolved itself, leaving final disposition of the complaint to a single judge.
>
> "The three-judge court is not required where the district court itself lacks jurisdiction of the complaint . . . . See *Ex parte Poresky,* 290 U. S. 30, 31 [(1973)]." *Gonzalez* v. *Employees Credit Union,* 419 U. S., at 100.

At the time injunctive relief against the statute was first sought, the action was not one "required" under § 1253 to be heard by a three-judge court because the claim

---

to educational redistricting. Invidious discrimination in such redistricting is perforce an 'inter-district violation.' The [EAA] 'redrew' the Wilmington School district lines by removing the existing Wilmington boundaries from the State Board's discretion at the same time that other school districts in Delaware were eligible for consolidation."

Pursuant to the above the District Court declared unconstitutional "[t]hose provisions of [the EAA] excluding the Wilmington School District from eligibility for consolidation," and ordered the parties to submit "alternative plans to remedy the segregation found [in the two opinions] (a) within the present boundaries of [Wilmington], and (b) incorporating other areas of [the] County." *Id.,* at 447. The accompanying order also specifically enjoined the board, in preparing the interdistrict version, "from relying upon" the EAA provisions found unconstitutional.

even at that stage was moot. In such a situation, our appellate jurisdiction is confined solely to corrective action in connection with the district court's mistaken issuance of an injunctive decree:

"As the case was not one within [§ 2281], the merits cannot be brought to this Court by a direct appeal. [Citations omitted.] But, although the merits cannot be reviewed here in such a case, this Court by virtue of its appellate jurisdiction in cases of decrees purporting to be entered pursuant to [§ 2281], necessarily has jurisdiction to determine whether the court below has acted within the authority conferred by that section and to make such corrective order as may be appropriate to the enforcement of the limitations which that section imposes." *Gully* v. *Interstate Nat. Gas Co.,* 292 U. S. 16, 18 (1934).

See also *Phillips* v. *United States,* 312 U. S., at 248; *Bailey* v. *Patterson,* 369 U. S. 31, 34 (1962); *Gonzalez* v. *Employees Credit Union, supra,* at 95 n. 12.

On the assumption that the District Court wrongly enjoined the enforcement of the statute which was moot at the time the injunction was first sought, the only proper exercise of the jurisdiction conferred upon us by 28 U. S. C. § 1253 is to reverse the injunctive decree issued by the District Court on the ground that the relief sought did not necessitate the convening of a three-judge district court, and remand the case so that it may proceed before a single-judge court.

I think the decision of the Court of Appeals for the Sixth Circuit in a situation virtually identical to that now presented here, and presented to that court in an earlier stage of the *Milliken* litigation, is of some weight in deciding the question of our jurisdiction here. That court held, *Bradley* v. *Milliken,* 468 F. 2d 902, cert.

denied, 409 U. S. 844 (1972), that an order finding an interdistrict violation and requiring submission of plans, but not imposing any remedy, was not appealable from the District Court to the Court of Appeals. Since the jurisdiction conferred upon the courts of appeals by 28 U. S. C. §§ 1291 and 1292 (a) is far more generous in scope than that conferred upon us by 28 U. S. C. § 1253, if the Court of Appeals was right in *Milliken* it is highly doubtful that we have any authority to go beyond review of the District Court's injunctive decree here.

The resolution of each of these issues which I have treated in this dissent is probably not free from doubt, and I could understand a reasoned disposition of the case here which differed from the views which I have expressed. But this is one of those cases in which an opinion of the Court seems to me to be necessary, not merely to resolve an issue concededly present, but to denominate for the benefit of the parties and the District Court what issues the Court conceives to be resolved by its summary affirmance. My dissent from that sort of affirmance here is based on my conviction that it is extraordinarily slipshod judicial procedure as well as my conviction that it is incorrect.