BUCHANAN ET AL. *v.* EVANS ET AL.

No. A-188.   Decided September 1, 1978

MR. JUSTICE BRENNAN, Circuit Justice.

The Delaware State Board of Education and eight intervening defendant suburban school districts [1] request that I stay execution of the judgment and mandate of the Court of Appeals for the Third Circuit in this case pending consideration by this Court of their petition for certiorari.   The judgment affirmed an order of the District Court for the District of Delaware prescribing a school desegregation plan involving

---

[1] Pursuant to the desegregation order of the United States District Court for the District of Delaware these eight suburban school districts, along with three others, were abolished as of July 1, 1978, and replaced by a single unified school district administered by the New Castle County Board of Education.   The District Court, however, granted the suburban school districts limited legal status "for the limited purpose of pursuing rights of appeal or judicial review."   447 F. Supp. 982, 1039 (1978).   Applicants do not now request that the order abolishing these school districts be stayed.   "The independent school districts having been dissolved effective July 1, 1978, [applicants] believe that any attempt to reconstitute those districts and to operate them separately at this late date would be more disruptive than to permit the single judicial district to operate at least for the current school year."   Application for Stay 8.

the city of Wilmington and 11 surrounding suburban school districts.[2]

In deciding whether to grant a stay pending disposition of a petition for certiorari, I must consider two factors.

"First, 'a Circuit Justice should "balance the equities" . . . and determine on which side the risk of irreparable injury weighs most heavily.' *Holtzman* v. *Schlesinger*, 414 U. S. 1304, 1308-1309 (1973) (MARSHALL, J., in chambers). Second, assuming a balance of equities in favor of the applicant, the Circuit Justice must also determine whether 'it is likely that four Members of this Court would vote to grant a writ of certiorari.' *Id.*, at 1310. The burden of persuasion as to both of these issues rests on the applicant . . . ." *Beame* v. *Friends of the Earth*, 434 U. S. 1310, 1312 (1977) (MARSHALL, J., in chambers).

That burden is "particularly heavy," *ibid.*, when, as here, a stay has been denied both by the District Court and unanimously by the Court of Appeals sitting en banc.

The thrust of applicants' position is that the desegregation plan ordered by the District Court and approved by the Court of Appeals is administratively and financially onerous, and that it is inconsistent with the precepts enunciated in *Dayton Board of Education* v. *Brinkman*, 433 U. S. 406 (1977).[3]

---

[2] Applicants request a stay of so much of the District Court's order as compels mandatory pupil and staff reassignment as well as other forms of ancillary relief. See *ibid.; id.*, Exhibit A, pp. 10–13.

[3] Applicants also contend that since the District Court's order entails "the extinction of eleven historic, independent political entities of the State of Delaware," it "constitutes an unprecedented exercise of judicial power which should be reviewed by this Court pursuant to certiorari." Application for Stay 11. Applicants, however, do not seek to stay that aspect of the District Court's order that abolishes the 11 school districts; indeed, applicants state that they will not suffer an irreparable injury if this aspect of the order is not presently stayed. See n. 1, *supra.* Were a grant of certiorari appropriate to this issue, any relief pertinent if applicants were to prevail as to this claim would in my view be distinct

*Dayton* vacated the order of a Court of Appeals which had "imposed a remedy . . . entirely out of proportion to the constitutional violations found by the District Court . . . ." *Id.,* at 418. The District Court had found only "three separate . . . relatively isolated instances of unconstitutional action on the part of petitioners," *id.,* at 413, but the Court of Appeals had nevertheless ordered a systemwide remedy. *Dayton* invoked the familiar "rule laid down in *Swann,* and elaborated upon in *Hills* v. *Gautreaux,* 425 U. S. 284 (1976)," that " '[o]nce a constitutional violation is found, a federal court is required to tailor "the scope of the remedy" to fit "the nature and extent of the constitutional violation." 418 U. S., at 744; *Swann* [v. *Charlotte-Mecklenburg Bd. of Education,* 402 U. S. ], at 16.' [*Hills* v. *Gautreaux,* 425 U. S.,] at 293–294." *Id.,* at 419–420. Applying this rule, *Dayton* required the District Court on remand to determine the "incremental segregative effect [constitutional] violations had on the racial distribution of the Dayton school population as presently constituted, when that distribution is compared to what it would have been in the absence of such constitutional violations. The remedy must be designed to redress that difference, and only if there has been a systemwide impact may there be a systemwide remedy. *Keyes,* 413 U. S., at 213." *Id.,* at 420.

The facts of *Dayton* are fundamentally different from the circumstances presented by this application. Segregation in Delaware, unlike that in Ohio, was mandated by law until 1954.[4] In the instant case the District Court found that "at

---

from the relief presently requested by applicants. See n. 2, *supra.* Consideration of this contention is therefore not relevant to my determination as to whether to grant a stay.

[4] A lineal ancestor of the present case was *Gebhart* v. *Belton,* 33 Del. Ch. 144, 91 A. 2d 137 (1952), in which the Delaware Supreme Court ordered the immediate admission of black children to certain schools previously attended only by whites. The case was appealed to this Court and consolidated and decided with *Brown* v. *Board of Education,* 347 U. S. 483 (1954). The instant case has been in the federal courts at least since

that time . . . Wilmington and suburban districts were not meaningfully 'separate and autonomous' " because *"de jure* segregation in New Castle County was a cooperative venture involving both city and suburbs." 393 F. Supp. 428, 437 (1975). So far from finding only isolated examples of unconstitutional action, the District Court in this case concluded "that segregated schooling in Wilmington has never been eliminated and that there still exists a dual school system." 379 F. Supp. 1218, 1223 (1974). The District Court found that this dual school system has been perpetuated through constitutional violations of an interdistrict nature,[5] necessitating for their rectification an interdistrict remedy. See 393 F. Supp. 428 (1975). See also 416 F. Supp. 328, 338–341 (1976). The District Court's finding of these interdistrict violations was summarily affirmed by this Court, 423 U. S. 963 (1975), and it thus constitutes the law of the case for purposes of this stay application. Unlike the situation in *Dayton,* therefore, the record before the Court of Appeals in the instant case was replete with findings justifying, if not requiring, the extensive interdistrict remedy ordered by the District Court.

Applicants argue, however, that the order of the District Court violates the principles of *Dayton* because no findings were made as to "incremental segregative effect." But even assuming that such an analysis were appropriate when, as here, there is an explicit finding that a *de jure* school system

1957. See 379 F. Supp. 1218, 1220 (Del. 1974); 424 F. Supp. 875, 876 n. 1 (Del. 1976).

[5] The District Court concluded that an interdistrict remedy would be appropriate, based on its findings that:

"1) there had been a failure to alter the historic pattern of inter-district segregation in Northern New Castle County;

"2) governmental authorities at the state and local levels were responsible to a significant degree for increasing the disparity in residential and school populations between Wilmington and the suburbs;

"3) the City of Wilmington had been unconstitutionally excluded from

has never been dismantled,[6] the remedy of the District Court was consciously fashioned to implement the familiar rule of *Swann* and *Gautreaux* that equitable relief should be tailored to fit the violation. "Our duty," stated the District Court in 1976, "is to order a remedy which will place the victims of the violation in substantially the position which they would have occupied had the violation not occurred." 416 F. Supp., at 341. And, as the District Court most recently stated:

> "[T]he firmly established constitutional violations in this case are the perpetuation of a dual school system and the vestige effects of pervasive *de jure* inter-district segregation. *Evans* v. *Buchanan*, 416 F. Supp. at 343; 393 F. Supp. at 432–438, 445, 447. *Dayton* reaffirms that '[o]nce a constitutional violation is found, a federal court is required to tailor "the scope of the remedy" to fit "the nature and extent of the constitutional violation." ' [433 U. S. at 420]; see *Milliken* [v. *Bradley*], 418 U. S. [717,] 744; *Swann*, 402 U. S. at 16. . . . Eradication of the constitutional violation to the scope and extent enumerated by the three-judge court is all that any of the plans and concepts submitted purport to accomplish, and that is all the concept endorsed by the Court does accomplish." 447 F. Supp. 982, 1011 (1978) (footnote omitted).[7]

---

other school districts by the State Board of Education, pursuant to a withholding of reorganization powers under the Delaware Educational Advancement Act of 1968." *Id.*, at 877.

The court specifically found that "the acts of the State and its subdivisions . . . had a substantial, not a de minimis, effect on the enrollment patterns of the separate districts." 416 F. Supp. 328, 339 (Del. 1976).

[6] In *Dayton,* of course, "mandatory segregation by law of the races in the schools [had] long since ceased . . . ." 433 U. S., at 420.

[7] Applicants' strenuous insistence upon such a narrow reading of the phrase "incremental segregative effect" entangles them in a contradiction. Before the District Court they took the position that " 'it is not "feasible"

The Court of Appeals accepted the principles of this analysis, and approved their application by the District Court. See Application for Stay, Exhibit B, p. 22; 555 F. 2d 373, 379–380 (CA3 1977). In these circumstances, I find no violation of the principles of *Dayton* sufficient to justify the conclusion that four Justices of this Court would vote to grant certiorari.

Applicants strenuously urge that irreparable financial and administrative difficulties attend upon the District Court's order. But both the District Court and the Court of Appeals, sitting en banc, have rejected this contention and concluded that, balancing the equities of this protracted litigation, applicants are not entitled to a stay. The judgments of these Courts are entitled to great deference. See *Board of Education of New Rochelle* v. *Taylor,* 82 S. Ct. 10, 11 (1961) (Brennan, J., in chambers). "It is clear that the . . . Court of Appeals gave full consideration to a similar motion and with a much fuller knowledge than we can have, denied it. As we have said, we require very cogent reasons before we will disregard the deliberate action of that court in such a matter." *Magnum Import Co.* v. *Coty,* 262 U. S. 159, 164 (1923).

The "devastating, often irreparable, injury to those children who experience segregation and isolation was noted [24] years ago in *Brown* v. *Board of Education,* 347 U. S. 483 (1954)." *Jefferson Parish School Board* v. *Dandridge,* 404 U. S. 1219, 1220 (1971) (Marshall, J., in chambers). This case has been in continuous litigation for the past 21 years. As my Brother Marshall stated seven years ago when asked to stay a school desegregation order:

"Whatever progress toward desegregation has been made

---

to determine what the affected school districts and school populations would be today "but for" the constitutional violations found by the three-judge court and affirmed on appeal.' " 447 F. Supp., at 1010 n. 123. The end result of applicants' positions is thus apparently that *no* equitable remedy would be appropriate.

apparently, and unfortunately, derives only from judicial action initiated by those persons situated as perpetual plaintiffs below. The rights of children to equal educational opportunities are not to be denied, even for a brief time, simply because a school board situates itself so as to make desegregation difficult." *Ibid.*

In such circumstances, I cannot conclude that the balance of equities lies in favor of applicants. The application for a stay is accordingly denied.