**Jeffrey P. BECK and Harry R. Beck, Plaintiffs,**

v.

**CLAYMONT SCHOOL DISTRICT and Archie F. Rapposelli, James M. T. Scanlan, James J. Elder, John C. Fannin, Jr., and Margaret M. Reese, as and constituting the Board of Education of Claymont School District, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted May 22, 1979.

Decided Aug. 17, 1979.

Arthur Inden, Richard A. Levine and David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs.

James T. McKinstry and David B. Stratton, of Richards, Layton & Finger, Wilmington, for defendants.

Dana S. Shreve, Asst. Atty. Gen., Dept. of Justice, Wilmington, amicus curiae.

WALSH, Judge.

In this negligence action, the plaintiffs seek recovery from the Claymont School District for medical expenses and injuries sustained by the minor plaintiff when he struck a cable while operating a motorcycle on School District property. The School District has moved to dismiss on the ground that it is immune from suits sounding in tort under the doctrine of sovereign immunity. Plaintiffs have, in turn, moved for partial summary judgment on the same issue and, in view of the recourse by both parties to matters outside the pleadings, the Court will view the conflicting positions as cross-motions for summary judgment. In view of the possible impact of this decision upon the State and its agencies, the Department of Justice was granted permission to participate in the briefing as *amicus curiae.*

Plaintiffs mount a broad attack upon the doctrine of sovereign immunity as it has developed in the decisional law of this State. While recognizing the impact of the seminal decision of the Delaware Supreme Court in *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71 (1962), they, nonetheless, contend that the Court misinterpreted the constitutional basis [1] for the doctrine in holding that only the General Assembly could waive its force. Plaintiffs view the constitutional basis as establishing the right to bring such suits with only the procedure for so doing left to legislative regulation. Plaintiffs' argument finds support in a decision interpreting a similar constitutional provision with opposite results. *Muskopf v. Corning Hospital District*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). In any event, plaintiffs argue, the doctrine is an anachronism, ill-suited to the modern view that the sovereign, least of all, should evade its responsibility to respond to the tort claims of its citizens. *Mayle v. Pennsylvania Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978); *Campbell v. State*, Ind. Supr., 284 N.E.2d 733 (1972); *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963); *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962).

While plaintiffs' plea for abrogation of the doctrine of sovereign immunity has merit, it is misdirected. In *Shellhorn*, the Supreme Court left no doubt that the doctrine is a viable defense to tort claims and has subsequently applied it, although with reluctance, to suits against State agencies. *Pajewski v. Perry*, Del.Supr., 363 A.2d 429 (1976); *Donovan v. Delaware Water & Air Resources Com'n*, Del.Supr., 358 A.2d 717 (1976). Regardless of the historical basis for the doctrine it remains in effect and binds this Court until such time as it is legislatively removed.

The doctrine of sovereign immunity has been limited in application, however, by two rulings of the Delaware Supreme Court

---

[1] In *Shellhorn*, the Court ruled that the doctrine of sovereign immunity had not been judicially created but rested upon the following provision of Article I, Section 9 of the Delaware Constitution:

\* \* \* \* \* \*

"Suits may be brought against the state, according to such regulation as shall be made by law."

which bear significance to this case. In *Varity Builders, Inc. v. Polikoff*, Del.Supr., 305 A.2d 618 (1973), the Court ruled that grant of county governmental authority under a "home rule" statute (9 *Del.C.* § 1101), resulted in a legislative waiver of New Castle County's sovereign immunity. In *City of Wilmington v. Spencer*, Del.Supr., 391 A.2d 199 (1978), the Court construed the language of the City of Wilmington's charter to also constitute a waiver of its sovereign immunity. In neither *Polikoff* nor *Spencer* did the Court find an express legislative waiver of immunity but reasoned that the "power to sue and be sued", an incident of governmental authority, was incompatible with the principle of sovereign immunity.

■ Plaintiffs contend that even if this Court finds the principle of sovereign immunity viable, it does not confer immunity upon the School District since it is not the "State", in the constitutional sense, and thus the immunity announced in *Shellhorn* does not extend to such governmental entities. To the contrary, the School District argues that as an agency of the State[2] and a sharer of its sovereignty, it is equally immune from tort suits. Plaintiffs argue that local school districts, as they have evolved under Delaware law, are more analogous to political subdivisions than integral arms of the State. As previously noted, since the ambit of sovereign immunity has been judicially denied to municipalities and counties as political subdivisions of the State under *Spencer* and *Polikoff* this argument deserves analysis.

In Delaware, school districts function to discharge the State's commitment to operate a free public school system. While Article X, Section 1 of the Delaware Constitution requires that the General Assembly provide for such a system, the method and format of the system is not prescribed. The General Assembly has elected to delegate certain aspects of this function to certain non-corporate public bodies subdivided on a geographical basis with certain policy powers reserved to a supervisory state agency—the State Board of Education. *Brennan v. Black*, Del.Supr., 104 A.2d 777 (1954); *Corder v. City of Milford*, Del.Super., 196 A.2d 406 (1963); *DuPont v. Mills*, Del.Supr., 196 A. 168 (1937). For the most part, the governing bodies of local school districts are elected by the residents of the various districts. Subject to State guidelines, school board members may set tax rates (14 *Del.C.* § 1902); issue bonds and pledge the full faith and credit of the district, but not the State (14 *Del.C.* Ch. 21); condemn property (14 *Del.C.* § 2303); hire employees and establish their pay scale (14 *Del.C.* § 1304); and enter into collective bargaining agreements (14 *Del.C.* Ch. 40). On the fiscal level, the local boards have broad discretion in expending funds to maintain and protect school property (14 *Del.C.* § 1055).

Although there is a sharing of educational and fiscal policy with the State, the school district functions as a separate political entity. Indeed, the comprehensive definition in the School District Reorganization Act of 1968 refers to a school district, not as an agency of the State, but as a geographic subdivision thereof.[3] As noted, the General Assembly is free to adopt any format to provide a general educational system in the State and, presumably, could have done so directly and exclusively through State

---

**2.** The term "state agency" is accorded a variety of uses and definition throughout the Delaware Code. Thus, for budgetary purposes, the term is defined to include ". . . every board, department, . . . or other authority created . . . to execute, supervise, control and/or administer governmental functions under the laws of this State . . . or to whom any moneys are appropriated under any budget appropriation act . . ." (29 *Del.C.* § 6101). For purposes of application of the public em-

ployees' ethics act, the term "State agency" includes all boards, departments and other public bodies created by act of the General Assembly, "excepting only political subdivisions of this State" (29 *Del.C.* § 5853).

**3.** "Unless otherwise defined in this chapter:
  (1) 'School district' means a clearly defined geographic subdivision of the State organized for the purposes of administering public education in that area." (14 *Del.C.* § 1002).

agencies.[4] It has, however, elected to share that responsibility with local political subdivisions, conferring upon them certain incidents of sovereignty. In *Re Opinion of Justices,* Del.Supr. 246 A.2d 90 (1968). The broad powers of the local school board include the ". . . susceptibility to suit and the power to litigate." *Mount Pleasant School Dist. v. Warder,* Del.Super., 375 A.2d 478, 480 (1977).

While the Claymont School District is an instrumentality established by the State to discharge a public purpose, this fact does not render it an agency of the State. Entities established by municipal or home rule charters spring from a common source but, as previously noted, do not share sovereign immunity. The most important factor to be considered in assessing whether a specific activity or undertaking is so closely state-connected as to render it an appendage of State sovereignty or an autonomous political entity is the degree of discretion exercised by the governing body in the area under scrutiny. In the area of fiscal expenditure and personnel the school districts have been deemed sufficiently independent of State control that they do not share the State's immunity from suit under the Eleventh Amendment of the United States Constitution.[5] *Morris v. Board of Education of Laurel Sch. Dist.,* D.Del., 401 F.Supp. 188 (1975); *Gordenstein v. University of Delaware,* D.Del., 381 F.Supp. 718 (1974). While school districts are hybrid entities to the extent they reflect a sharing of State and local control, the same observations might be made of other political subdivisions, whose functioning is subject to legislative control despite the granting of limited autonomy. Thus, the New Castle County government prior to achieving home rule status, was considered subject to suit. *NA–JA Construction Corporation v. Rob-*

*erts,* D.Del., 259 F.Supp. 895 (1966). In rejecting the contention that the Levy Court of New Castle County was so integral a part of State government as to share its sovereign immunity the Court noted:

"The point of inquiry, then, should be whether the suit, no matter how entitled, is one in which the right asserted and the relief asked is against the State. So viewed, the answer is clear. This suit, properly entitled, not only is against the Levy Court of New Castle County but also affects the right of a party to recover monies, not from the State, but from the county for alleged breach of a contract which the county had full power to enter into. The right asserted and the relief asked are against the county. A judgment against the defendant would thus be paid, not from the State, but rather the county, treasury. The contract forming the basis of the suit is, thus, not of State concern." (259 F.Supp. 899)

The School District asserts that any judgment obtained by plaintiffs against it might become a lien upon its property and require the expenditure of state funds to discharge. This argument assumes the reverse of the funding mechanism of local school districts as it exists in Delaware. The State provides merely a basic grant on a pupil unit basis in stated categories: Division I funds for salaries; Division II funds for textbooks, furniture and classroom equipment and Division III funding for education advancement, in effect, a supplementation of the other categories (14 *Del.C.* Ch. 17). All other expenses, particularly those related to property acquisition, maintenance and protection are the responsibility of the local districts. In short, under the historical funding formula in Delaware, the local

---

4. At present, the State's control over the operation of certain local school districts, including the Claymont School District, has been preempted by Federal judicial authority. *Evans v. Buchanan,* D.Del., 393 F.Supp. 428 (1975), aff'd mem. 423 U.S. 963, 96 S.Ct. 381, 46 L.Ed.2d 293 (1975). As a result, the defendant school district does not presently enjoy separate legal existence. This development, however, plays no part in the result here reached.

5. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

school district, not the State, is responsible for extraordinary expenses relating to the use of buildings and property, in apparent legislative recognition that the control of the physical plant aspect of school operation is a matter of local responsibility.

Both the School District and the Department of Justice contend that the providing of public education is a purely governmental function and thus, even if local school districts are deemed autonomous political subdivisions of the State they are, nonetheless, entitled to local governmental immunity as applied in *Delaware Liquor Store v. Mayor and Council, etc.*, Del.Super., 75 A.2d 272 (1950) and *Flait v. Mayor & Council of Wilmington*, Del.Supr., 97 A.2d 545 (1953). The recent holding in *Spencer*, however, dealt directly with the issue of immunity for governmental, as distinguished from proprietary, functions and, in effect, ruled the distinction irrelevant if the General Assembly has created a waiver of sovereign immunity through the creation of a separate political governmental entity with the power to sue and be sued.[6]

The School District claims its entitlement to the defense of sovereign immunity has been judicially recognized in *Slovin v. Gauger*, Del.Super., 193 A.2d 452, 465 (1963). Although *Slovin* involved a claim against the Newark Special School District which asserted the defense of sovereign immunity, summary judgment was granted in favor of all defendants, including the school district, on other grounds. The Court did express its "views" on the question of sovereign immunity but the Court's disclaimer that it had not "carefully examined or considered the matter" nor had it determined the sovereignty question dilutes the precedential value of the decision. The comment of the Court is clearly dicta and not binding on this Court, particularly in the light of subsequent developments in the decisional law on the subject.

The General Assembly has spoken to the issue of school district liability for acts of negligence in the letting without charge of school buildings. Section 1056(h) of Title 14 provides:

"(h) Any school board which permits the use of public school property for any use other than for public school use shall not be liable in tort for any damages by reason of negligence in the construction or maintenance of such property."

It is difficult to reconcile the need for a specific grant of immunity for negligent acts with the argument that the same entity shares the State's general immunity. Apparently, the General Assembly acted to protect the School District from suits arising from its status as a gratuitous lessor, in implicit recognition of its amenability to suit.

Both the School District and the Department of Justice argue that General Assembly considered school districts as state agencies for purposes of sovereign immunity by explicit reference to them in the legislative scheme designed to provide liability insurance for state-funded activities. Section 6502 of Title 18 provides:

"There is hereby established the Insurance Coverage Determination Committee, which shall be composed of the Governor, the State Auditor and the Insurance Commissioner, during their respective terms of office. The Committee shall from time to time determine the method of insuring, the amount of insurance, and the class of coverage covering any type of risk to which the State may be exposed, including, but not limited to: . . .; to be effected and carried by the State or any subdivision thereof, *including all school districts, but excluding, however, municipal corporations, counties, and the authorities relating to the crossings of the Delaware River and the Delaware Bay.*" (Emphasis supplied).

---

6. The significance of the "sue and be sued" test as announced in *Spencer* is that it tacitly overrules the holding in *Eastern Union Co. v. Moffat Tunnel Improvement Dist.*, Del.Super., 178

A. 864 (1935), which the Court in *Flait* felt bound to follow since the City Charter of Wilmington, then in effect, also conferred the right "to sue and be sued".

The insurance program contemplated by Chapter 65 of Title 18 has never become effective because of lack of appropriation and, for present purposes, uncertainty as to the responsibility of the Insurance Coverage Determination Committee to secure insurance for local school districts. Also included in the same chapter is an express waiver of sovereign immunity "as to any risk or loss covered by the state insurance coverage program . . ." (18 *Del.C.* Ch. 6511). But as the Supreme Court noted in *Pajewski v. Perry, supra,* § 6511 represents a presumptive waiver of sovereign immunity with an explanation required for the failure to provide the accompanying coverage. It is significant in this case that six months prior to the date of the underlying incident the School District had liability insurance in effect, which it had purchased directly covering claims of the type here asserted. The School District asserts that the independent, unauthorized purchase of such insurance does not deprive it of its claimed immunity. But purchase of such insurance is a clear indication that the School District had the means and the discretion to protect itself from the type of incident here under consideration. The State Insurance Program by its terms does not prohibit the purchase of local coverage unless coverage is "herein provided" (18 *Del.C.* § 6509). In the absence of a viable state insurance program, there appears no reason why a local district cannot revert to its prior practice.

The School District points to the recent enactment of the Tort Claims Act (10 *Del.C.* Ch. 40; 61 Del.Laws Ch. 431), which became effective July 7, 1978, as a legislative indication that local school districts share sovereign immunity as state agencies. This Act does little to clarify an already murky picture since as its synopsis recites, its dual purpose is to "discourage law suits" directed against the decision-making authority of State employees and to "make clear" that liability attaches for gross negligence or acts of bad faith. Although the Act provides a limitation on the civil liability of the State "or any public officer or employee . . . of the State" (10 *Del.C.* § 4001),

its provisions extending similar protection to political subdivisions make a clear distinction between employees of the State and those answerable to other governing bodies, *i. e.,* "political subdivision of the State including the various school districts" (10 *Del.C.* § 4003). This distinction further illustrates the legislative view of the autonomy of local school districts and their separate treatment as political subdivisions.

The legislative history of local school district autonomy reflects a mixed pattern. But, the foregoing analysis of the relationship between the local school district and its political parent, the State, leads to the conclusion that local school districts, in many aspects of their operation, are autonomous political subdivisions particularly with respect to the ownership and management of school property. This control, engrafted upon their ability to sue and be sued, renders them responsible entities enjoying a legal status separate from the State. The historical treatment of that status by the General Assembly constitutes a waiver of such sovereign immunity as might otherwise attach to a State agency.

In view of the holding that the Claymont School District does not share the State's sovereign immunity, it is unnecessary to deal with the question of whether the failure of the General Assembly to fund the State Insurance Program established by 10 *Del.C.* Ch. 65, effectively rebuts the presumptive waiver created by § 6511.

The Claymont School District having been determined not to share in the State's sovereign immunity, partial summary judgment is granted in favor of plaintiffs.

IT IS SO ORDERED.